# HORTON v. CALIFORNIA

No. 88–7164.   Argued February 21, 1990—Decided June 4, 1990

Stevens, J., delivered the opinion of the Court, in which Rehnquist, C. J., and White, Blackmun, O'Connor, Scalia, and Kennedy, JJ., joined. Brennan, J., filed a dissenting opinion, in which Marshall, J., joined, *post*, p. 142.

*Juliana Drous*, by appointment of the Court, 493 U. S. 952, argued the cause and filed briefs for petitioner.

*Martin S. Kaye*, Supervising Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *John K. Van de Kamp*, Attorney General,

*Richard B. Iglehart*, Chief Assistant Attorney General, *John H. Sugiyama,* Senior Assistant Attorney General, and *Clifford K. Thompson, Jr.,* Deputy Attorney General.\*

JUSTICE STEVENS delivered the opinion of the Court.

In this case we revisit an issue that was considered, but not conclusively resolved, in *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971): Whether the warrantless seizure of evidence of crime in plain view is prohibited by the Fourth Amendment if the discovery of the evidence was not inadvertent. We conclude that even though inadvertence is a characteristic of most legitimate "plain-view" seizures, it is not a necessary condition.

I

Petitioner was convicted of the armed robbery of Erwin Wallaker, the treasurer of the San Jose Coin Club. When Wallaker returned to his home after the Club's annual show, he entered his garage and was accosted by two masked men, one armed with a machine gun and the other with an electrical shocking device, sometimes referred to as a "stun gun." The two men shocked Wallaker, bound and handcuffed him, and robbed him of jewelry and cash. During the encounter sufficient conversation took place to enable Wallaker subsequently to identify petitioner's distinctive voice. His identification was partially corroborated by a witness who saw the robbers leaving the scene and by evidence that petitioner had attended the coin show.

Sergeant LaRault, an experienced police officer, investigated the crime and determined that there was probable cause to search petitioner's home for the proceeds of the rob-

\*Briefs of *amici curiae* urging affirmance were filed for the United States by *Solicitor General Starr, Assistant Attorney General Dennis, Deputy Solicitor General Bryson,* and *Brian J. Martin;* and for Americans for Effective Law Enforcement, Inc., et al. by *Gregory U. Evans, Daniel B. Hales, George D. Webster, Jack E. Yelverton, Fred E. Inbau, Wayne W. Schmidt, Bernard J. Farber,* and *James P. Manak.*

bery and for the weapons used by the robbers. His affidavit for a search warrant referred to police reports that described the weapons as well as the proceeds, but the warrant issued by the Magistrate only authorized a search for the proceeds, including three specifically described rings.

Pursuant to the warrant, LaRault searched petitioner's residence, but he did not find the stolen property. During the course of the search, however, he discovered the weapons in plain view and seized them. Specifically, he seized an Uzi machine gun, a .38-caliber revolver, two stun guns, a handcuff key, a San Jose Coin Club advertising brochure, and a few items of clothing identified by the victim.[1] LaRault testified that while he was searching for the rings, he also was interested in finding other evidence connecting petitioner to the robbery. Thus, the seized evidence was not discovered "inadvertently."

The trial court refused to suppress the evidence found in petitioner's home and, after a jury trial, petitioner was found guilty and sentenced to prison. The California Court of Appeal affirmed. App. 43. It rejected petitioner's argument that our decision in *Coolidge* required suppression of the seized evidence that had not been listed in the warrant because its discovery was not inadvertent. App. 52–53. The court relied on the California Supreme Court's decision in *North* v. *Superior Court*, 8 Cal. 3d 301, 502 P. 2d 1305 (1972). In that case the court noted that the discussion of the inadvertence limitation on the "plain-view" doctrine in Justice Stewart's opinion in *Coolidge* had been joined by only three other Members of this Court and therefore was not binding on it.[2] The California Supreme Court denied petitioner's request for review. App. 78.

---

[1] Although the officer viewed other handguns and rifles, he did not seize them because there was no probable cause to believe they were associated with criminal activity. App. 30; see *Arizona* v. *Hicks*, 480 U. S. 321, 327 (1987).

[2] "In *Coolidge*, the police arrested a murder suspect in his house and thereupon seized his automobile and searched it later at the police station,

Because the California courts' interpretation of the "plain-view" doctrine conflicts with the view of other courts,[3] and because the unresolved issue is important, we granted certiorari, 493 U. S. 889 (1989).

---

finding physical evidence that the victim had been inside the vehicle. The record disclosed that the police had known for some time of the probable role of the car in the crime, and there were no 'exigent circumstances' to justify a warrantless search. Accordingly, the plurality opinion of Justice Stewart concluded that the seizure could not be justified on the theory that the vehicle was itself the 'instrumentality' of the crime and was discovered 'in plain view' of the officers. Justice Stewart was of the opinion that the 'plain-view' doctrine is applicable only to the *inadvertent* discovery of incriminating evidence.

"If the plurality opinion in *Coolidge* were entitled to binding effect as precedent, we would have difficulty distinguishing its holding from the instant case, for the discovery of petitioner's car was no more 'inadvertent' than in *Coolidge*. However, that portion of Justice Stewart's plurality opinion which proposed the adoption of new restrictions to the 'plain-view' rule was signed by only four members of the court (Stewart, J., Douglas, J., Brennan, J., and Marshall, J.). Although concurring in the judgment, Justice Harlan declined to join in that portion of the opinion, and the four remaining justices expressly disagreed with Justice Stewart on this point." *North* v. *Superior Court*, 8 Cal. 3d, at 307–308, 502 P. 2d, at 1308 (citations omitted).

[3] See, *e. g.*, *Wolfenbarger* v. *Williams*, 826 F. 2d 930 (CA10 1987); *United States* v. *$10,000 in United States Currency*, 780 F. 2d 213 (CA2 1986); *United States* v. *Roberts*, 644 F. 2d 683 (CA8), cert. denied, 449 U. S. 821 (1980); *United States* v. *Antill*, 615 F. 2d 648 (CA5 1980); *Terry* v. *State*, 271 Ark. 715, 610 S. W. 2d 272 (App. 1981); *State* v. *Johnson*, 17 Wash. App. 153, 561 P. 2d 701 (1977); *Commonwealth* v. *Cefalo*, 381 Mass. 319, 409 N. E. 2d 719 (1980); *State* v. *Sanders*, 431 So. 2d 1034 (Fla. App. 1983); *State* v. *Galloway*, 232 Kan. 87, 652 P. 2d 673 (1982); *Clark* v. *State*, 498 N. E. 2d 918 (Ind. 1986); *State* v. *Eiseman*, 461 A. 2d 369, 380 (R. I. 1983); *State* v. *McColgan*, 631 S. W. 2d 151 (Tenn. Crim. App. 1981); *Tucker* v. *State*, 620 P. 2d 1314 (Okla. Crim. App. 1980); *State* v. *Dingle*, 279 S. C. 278, 306 S. E. 2d 223 (1983). See also the cases cited in the Appendices to JUSTICE BRENNAN's dissenting opinion, *post*, at 149–153. At least two other state courts have agreed with the California Supreme Court. See *State* v. *Pontier*, 95 Idaho 707, 712, 518 P. 2d 969, 974 (1974); *State* v. *Romero*, 660 P. 2d 715 (Utah 1983).

## II

The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. *United States* v. *Jacobsen*, 466 U. S. 109, 113 (1984). The "plain-view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable,[4] but this characterization overlooks the important difference between searches and seizures.[5] If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. *Arizona* v. *Hicks,*

---

[4] "We reaffirm the basic rule of Fourth Amendment jurisprudence stated by Justice Stewart for a unanimous Court in *Mincey* v. *Arizona*, 437 U. S. 385, 390 [(1978)]:

"'The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States*, 389 U. S. 347, 357 [(1967)] (footnotes omitted).'" *United States* v. *Ross*, 456 U. S. 798, 824–825 (1982).

[5] "It is important to distinguish 'plain view,' as used in *Coolidge* to justify *seizure* of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search, see *infra*, at 740; *Katz* v. *United States*, 389 U. S. 347 (1967), the former generally does implicate the Amendment's limitations upon seizures of personal property." *Texas* v. *Brown*, 460 U. S. 730, 738, n. 4 (1983) (opinion of REHNQUIST, J.).

480 U. S. 321, 325 (1987); *Illinois* v. *Andreas*, 463 U. S. 765, 771 (1983). A seizure of the article, however, would obviously invade the owner's possessory interest. *Maryland* v. *Macon*, 472 U. S. 463, 469 (1985); *Jacobsen*, 466 U. S., at 113. If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches.

The criteria that generally guide "plain-view" seizures were set forth in *Coolidge* v. *New Hampshire*, 403 U. S. 443 (1971). The Court held that the police, in seizing two automobiles parked in plain view on the defendant's driveway in the course of arresting the defendant, violated the Fourth Amendment. Accordingly, particles of gunpowder that had been subsequently found in vacuum sweepings from one of the cars could not be introduced in evidence against the defendant. The State endeavored to justify the seizure of the automobiles, and their subsequent search at the police station, on four different grounds, including the "plain-view" doctrine.[6] The scope of that doctrine as it had developed in earlier cases was fairly summarized in these three paragraphs from Justice Stewart's opinion:

> "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain-view' doctrine has been to identify the circumstances in which plain view

---

[6] The State primarily contended that the seizures were authorized by a warrant issued by the attorney general, but the Court held the warrant invalid because it had not been issued by "a neutral and detached magistrate." 403 U. S., at 449–453. In addition, the State relied on three exceptions from the warrant requirement: (1) search incident to arrest; (2) the automobile exception; and (3) the "plain-view" doctrine. *Id.*, at 453–473.

has legal significance rather than being simply the normal concomitant of any search, legal or illegal.

"An example of the applicability of the 'plain-view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character. Cf. *Go-Bart Importing Co.* v. *United States*, 282 U. S. 344, 358 [(1931)]; *United States* v. *Lefkowitz*, 285 U. S. 452, 465 [(1932)]; *Steele* v. *United States*, 267 U. S. 498 [(1925)]; *Stanley* v. *Georgia*, 394 U. S. 557, 571 [(1969)] (STEWART, J., concurring in result). Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in 'hot pursuit' of a fleeing suspect. *Warden* v. *Hayden*, [387 U. S. 294 (1967)]; cf. *Hester* v. *United States*, 265 U. S. 57 [(1924)]. And an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. *Chimel* v. *California*, 395 U. S. [752,] 762–763 [(1969)]. Finally, the 'plain-view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. *Harris* v. *United States*, 390 U. S. 234 [(1968)]; *Frazier* v. *Cupp*, 394 U. S. 731 [(1969)]; *Ker* v. *California*, 374 U. S. [23,] 43 [(1963)]. Cf. *Lewis* v. *United States*, 385 U. S. 206 [(1966)].

"What the 'plain-view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object,

hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain-view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Id.*, at 465–466 (footnote omitted).

Justice Stewart then described the two limitations on the doctrine that he found implicit in its rationale: First, that "plain view *alone* is never enough to justify the warrantless seizure of evidence," *id.*, at 468; and second, that "the discovery of evidence in plain view must be inadvertent." *Id.*, at 469.

Justice Stewart's analysis of the "plain-view" doctrine did not command a majority, and a plurality of the Court has since made clear that the discussion is "not a binding precedent." *Texas* v. *Brown*, 460 U. S. 730, 737 (1983) (opinion of REHNQUIST, J.). Justice Harlan, who concurred in the Court's judgment and in its response to the dissenting opinions, 403 U. S., at 473–484, 490–493, did not join the plurality's discussion of the "plain-view" doctrine. See *id.*, at 464–473. The decision nonetheless is a binding precedent. Before discussing the second limitation, which is implicated in this case, it is therefore necessary to explain why the first adequately supports the Court's judgment.

It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." *Id.*, at 466; see also *Arizona* v.

*Hicks*, 480 U. S., at 326–327. Thus, in *Coolidge*, the cars were obviously in plain view, but their probative value remained uncertain until after the interiors were swept and examined microscopically. Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.[7] As the United States has suggested, Justice Harlan's vote in *Coolidge* may have rested on the fact that the seizure of the cars was accomplished by means of a warrantless trespass on the defendant's property.[8] In all events, we are satisfied that the absence of inadvertence was not essential to the Court's rejection of the State's "plain-view" argument in *Coolidge*.

## III

Justice Stewart concluded that the inadvertence requirement was necessary to avoid a violation of the express constitutional requirement that a valid warrant must particularly describe the things to be seized. He explained:

> "The rationale of the exception to the warrant requirement, as just stated, is that a plain-view seizure will not turn an initially valid (and therefore limited) search into

[7] "This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. *Taylor* v. *United States*, 286 U. S. 1 [(1932)]; *Johnson* v. *United States*, 333 U. S. 10 [(1948)]; *McDonald* v. *United States*, 335 U. S. 451 [(1948)]; *Jones* v. *United States*, 357 U. S. 493, 497–498 [(1958)]; *Chapman* v. *United States*, 365 U. S. 610 [(1961)]; *Trupiano* v. *United States*, 334 U. S. 699 [(1948)]." *Coolidge*, 403 U. S., at 468.

We have since applied the same rule to the arrest of a person in his home. See *Minnesota* v. *Olson*, 495 U. S. 91 (1990); *Payton* v. *New York*, 445 U. S. 573 (1980).

[8] See Brief for United States as *Amicus Curiae* 7, n. 4.

a 'general' one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as *'per se* unreasonable' in the absence of 'exigent circumstances.'

"If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of 'Warrants . . . particularly describing . . . [the] things to be seized.'" 403 U. S., at 469–471.

We find two flaws in this reasoning. First, evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement. If the officer has knowledge approaching certainty that the item will be found, we see no reason why he or she would deliberately omit a particular description of the item to be seized from the application for a search warrant.[9] Specification of the additional item could only permit the offi-

---

[9] "If the police have probable cause to search for a photograph as well as a rifle and they proceed to seek a warrant, they could have no possible motive for deliberately including the rifle but omitting the photograph. Quite the contrary is true. Only oversight or careless mistake would explain the omission in the warrant application if the police were convinced they had probable cause to search for the photograph." *Coolidge,* 403 U. S., at 517 (WHITE, J., concurring and dissenting).

cer to expand the scope of the search. On the other hand, if he or she has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first. The hypothetical case put by JUSTICE WHITE in his concurring and dissenting opinion in *Coolidge* is instructive:

> "Let us suppose officers secure a warrant to search a house for a rifle. While staying well within the range of a rifle search, they discover two photographs of the murder victim, both in plain sight in the bedroom. Assume also that the discovery of the one photograph was inadvertent but finding the other was anticipated. The Court would permit the seizure of only one of the photographs. But in terms of the 'minor' peril to Fourth Amendment values there is surely no difference between these two photographs: the interference with possession is the same in each case and the officers' appraisal of the photograph they expected to see is no less reliable than their judgment about the other. And in both situations the actual inconvenience and danger to evidence remain identical if the officers must depart and secure a warrant." *Id.*, at 516.

Second, the suggestion that the inadvertence requirement is necessary to prevent the police from conducting general searches, or from converting specific warrants into general warrants, is not persuasive because that interest is already served by the requirements that no warrant issue unless it "particularly describ[es] the place to be searched and the persons or things to be seized," see *Maryland* v. *Garrison*, 480 U. S. 79, 84 (1987); *Steele* v. *United States No. 1*, 267 U. S. 498, 503 (1925),[10] and that a warrantless search be circum-

---

[10] "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to

scribed by the exigencies which justify its initiation.　See, e. g., *Maryland* v. *Buie,* 494 U. S. 325, 332–334 (1990); *Mincey* v. *Arizona,* 437 U. S. 385, 393 (1978).　Scrupulous adherence to these requirements serves the interests in limiting the area and duration of the search that the inadvertence requirement inadequately protects.　Once those commands have been satisfied and the officer has a lawful right of access, however, no additional Fourth Amendment interest is furthered by requiring that the discovery of evidence be inadvertent.　If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.　Thus, in the case of a search incident to a lawful arrest, "[i]f the police stray outside the scope of an authorized *Chimel* search they are already in violation of the Fourth Amendment, and evidence so seized will be excluded; adding a second reason for excluding evidence hardly seems worth the candle." *Coolidge,* 403 U. S., at 517 (WHITE, J., concurring and dissenting).　Similarly, the object of a warrantless search of an automobile also defines its scope:

> "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted.　Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.　Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe

be searched and the persons or things to be seized.'　The manifest purpose of this particularity requirement was to prevent general searches.　By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland* v. *Garrison,* 480 U. S., at 84.

that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." *United States* v. *Ross,* 456 U. S. 798, 824 (1982).

In this case, the scope of the search was not enlarged in the slightest by the omission of any reference to the weapons in the warrant. Indeed, if the three rings and other items named in the warrant had been found at the outset — or if petitioner had them in his possession and had responded to the warrant by producing them immediately — no search for weapons could have taken place. Again, JUSTICE WHITE's concurring and dissenting opinion in *Coolidge* is instructive:

"Police with a warrant for a rifle may search only places where rifles might be and must terminate the search once the rifle is found; the inadvertence rule will in no way reduce the number of places into which they may lawfully look." 403 U. S., at 517.

As we have already suggested, by hypothesis the seizure of an object in plain view does not involve an intrusion on privacy.[11] If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view and there is no need for an inadvertence limitation on seizures to condemn it. The prohibition against general searches and general warrants serves primarily as a protection against unjustified intrusions on privacy. But reliance

[11] Even if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to either a search warrant, see *Smith* v. *Ohio,* 494 U. S. 541 (1990); *United States* v. *Place,* 462 U. S. 696, 701 (1983); *Arkansas* v. *Sanders,* 442 U. S. 753 (1979); *United States* v. *Chadwick,* 433 U. S. 1 (1977); *United States* v. *Van Leeuwen,* 397 U. S. 249 (1970); *Ex parte Jackson,* 96 U. S. 727, 733 (1878), or one of the well-delineated exceptions to the warrant requirement. See *Colorado* v. *Bertine,* 479 U. S. 367 (1987); *United States* v. *Ross,* 456 U. S. 798 (1982).

on privacy concerns that support that prohibition is misplaced when the inquiry concerns the scope of an exception that merely authorizes an officer with a lawful right of access to an item to seize it without a warrant.

In this case the items seized from petitioner's home were discovered during a lawful search authorized by a valid warrant. When they were discovered, it was immediately apparent to the officer that they constituted incriminating evidence. He had probable cause, not only to obtain a warrant to search for the stolen property, but also to believe that the weapons and handguns had been used in the crime he was investigating. The search was authorized by the warrant; the seizure was authorized by the "plain-view" doctrine. The judgment is affirmed.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

I remain convinced that Justice Stewart correctly articulated the plain-view doctrine in *Coolidge* v. *New Hampshire*, 403 U. S. 443 (1971). The Fourth Amendment permits law enforcement officers to seize items for which they do not have a warrant when those items are found in plain view and (1) the officers are lawfully in a position to observe the items, (2) the discovery of the items is "inadvertent," and (3) it is immediately apparent to the officers that the items are evidence of a crime, contraband, or otherwise subject to seizure. In eschewing the inadvertent discovery requirement, the majority ignores the Fourth Amendment's express command that warrants particularly describe not only the *places* to be searched, but also the *things* to be seized. I respectfully dissent from this rewriting of the Fourth Amendment.

I

The Fourth Amendment states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Amendment protects two distinct interests. The prohibition against unreasonable searches and the requirement that a warrant "particularly describ[e] the place to be searched" protect an interest in privacy. The prohibition against unreasonable seizures and the requirement that a warrant "particularly describ[e] . . . the . . . things to be seized" protect a possessory interest in property.[1] See *ante,* at 133; *Texas* v. *Brown,* 460 U. S. 730, 747 (1983) (STEVENS, J., concurring in judgment). The Fourth Amendment, by its terms, declares the privacy and possessory interests to be equally important. As this Court recently stated: "Although the interest protected by the Fourth Amendment injunction against unreasonable searches is quite different from that protected by its injunction against unreasonable seizures, neither the one nor the other is of inferior worth or necessarily requires only lesser protection." *Arizona* v. *Hicks,* 480 U. S. 321, 328 (1987) (citation omitted).

The Amendment protects these equally important interests in precisely the same manner: by requiring a neutral and detached magistrate to evaluate, before the search or seizure, the government's showing of probable cause and its particular description of the place to be searched and the items to be seized. Accordingly, just as a warrantless

---

[1] As the majority recognizes, the requirement that warrants particularly describe the things to be seized also protects privacy interests by preventing general searches. *Ante,* at 139–141. The scope of a search is limited to those places in which there is probable cause to believe an item particularly described in the warrant might be found. A police officer cannot search for a lawnmower in a bedroom, or for an undocumented alien in a suitcase. *Ante,* at 140–141 (citing *United States* v. *Ross,* 456 U. S. 798, 824 (1982)). Similarly, once all of the items particularly described in a warrant have been found, the search must cease and no further invasion of privacy is permitted. *Ante,* at 141.

search is *per se* unreasonable absent exigent circumstances, so too a seizure of personal property is *"per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States* v. *Place,* 462 U. S. 696, 701 (1983) (footnote omitted) (citing *Marron* v. *United States,* 275 U. S. 192, 196 (1927)). "Prior review by a neutral and detached magistrate is the time-tested means of effectuating Fourth Amendment rights." *United States* v. *United States District Court, Eastern District of Michigan,* 407 U. S. 297, 318 (1972). A decision to invade a possessory interest in property is too important to be left to the discretion of zealous officers "engaged in the often competitive enterprise of ferreting out crime." *Johnson* v. *United States,* 333 U. S. 10, 14 (1948). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron, supra,* at 196.

The plain-view doctrine is an exception to the general rule that a seizure of personal property must be authorized by a warrant. As Justice Stewart explained in *Coolidge,* 403 U. S., at 470, we accept a warrantless seizure when an officer is lawfully in a location and inadvertently sees evidence of a crime because of "the inconvenience of procuring a warrant" to seize this newly discovered piece of evidence. But "where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it," the argument that procuring a warrant would be "inconvenient" loses much, if not all, of its force. *Ibid.* Barring an exigency, there is no reason why the police officers could not have obtained a warrant to seize this evidence before entering the premises. The rationale behind the inadvertent discovery requirement is simply that we will not excuse officers

from the general requirement of a warrant to seize if the officers know the location of evidence, have probable cause to seize it, intend to seize it, and yet do not bother to obtain a warrant particularly describing that evidence. To do so would violate "the express constitutional requirement of 'Warrants . . . particularly describing . . . [the] things to be seized,'" and would "fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." *Id.*, at 471.

Although joined by only three other Members of the Court, Justice Stewart's discussion of the inadvertent discovery requirement has become widely accepted. See *Texas* v. *Brown, supra,* at 746 (Powell, J., concurring in judgment) ("Whatever my view might have been when *Coolidge* was decided, I see no reason at this late date to imply criticism of its articulation of this exception. It has been accepted generally for over a decade"). Forty-six States and the District of Columbia[2] and 12 United States Courts of Appeals[3] now require plain-view seizures to be inadvertent. There has been no outcry from law enforcement officials that the inadvertent discovery requirement unduly burdens their efforts. Given that the requirement is inescapably rooted in the plain language of the Fourth Amendment, I cannot fathom the Court's enthusiasm for discarding this element of the plain-view doctrine.

The Court posits two "flaws" in Justice Stewart's reasoning that it believes demonstrate the inappropriateness of the inadvertent discovery requirement. But these flaws are illusory. First, the majority explains that it can see no reason

---

[2] See Appendix A, *infra,* at 149–152. Only three States—California, Idaho, and Utah—have rejected the inadvertent discovery requirement. See *People* v. *Bittaker,* 48 Cal. 3d 1046, 1076, 774 P. 2d 659, 673–674 (1989), cert. pending, No. 89–6223; *State* v. *Pontier,* 95 Idaho 707, 712, 518 P. 2d 969, 974 (1974); *State* v. *Kelly,* 718 P. 2d 385, 389, n. 1 (Utah 1986). The status of the inadvertent discovery requirement in Delaware is unclear. See, *e. g., Wicks* v. *State,* 552 A. 2d 462, 465 (Del. Super. 1988).

[3] See Appendix B, *infra,* at 152–153.

why an officer who "has knowledge approaching certainty" that an item will be found in a particular location "would deliberately omit a particular description of the item to be seized from the application for a search warrant." *Ante*, at 138. But to the individual whose possessory interest has been invaded, it matters not *why* the police officer decided to omit a particular item from his application for a search warrant. When an officer with probable cause to seize an item fails to mention that item in his application for a search warrant—for whatever reason—and then seizes the item anyway, his conduct is *per se* unreasonable. Suppression of the evidence so seized will encourage officers to be more precise and complete in future warrant applications.

Furthermore, there are a number of instances in which a law enforcement officer might deliberately choose to omit certain items from a warrant application even though he has probable cause to seize them, knows they are on the premises, and intends to seize them when they are discovered in plain view. For example, the warrant application process can often be time consuming, especially when the police attempt to seize a large number of items. An officer interested in conducting a search as soon as possible might decide to save time by listing only one or two hard-to-find items, such as the stolen rings in this case, confident that he will find in plain view all of the other evidence he is looking for before he discovers the listed items. Because rings could be located almost anywhere inside or outside a house, it is unlikely that a warrant to search for and seize the rings would restrict the scope of the search. An officer might rationally find the risk of immediately discovering the items listed in the warrant—thereby forcing him to conclude the search immediately—outweighed by the time saved in the application process.

The majority also contends that, once an officer is lawfully in a house and the scope of his search is adequately circumscribed by a warrant, "no additional Fourth Amendment

interest is furthered by requiring that the discovery of evidence be inadvertent." *Ante*, at 140. Put another way, "'the inadvertence rule will in no way reduce the number of places into which [law enforcement officers] may lawfully look.'" *Ante*, at 141 (quoting *Coolidge*, 403 U. S., at 517 (WHITE, J., concurring and dissenting)). The majority is correct, but it has asked the wrong question. It is true that the inadvertent discovery requirement furthers no privacy interests. The requirement in no way reduces the scope of a search or the number of places into which officers may look. But it does protect possessory interests. Cf. *Illinois* v. *Andreas*, 463 U. S. 765, 771 (1983) ("The plain-view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; *the owner may retain the incidents of title and possession* but not privacy") (emphasis added). The inadvertent discovery requirement is essential if we are to take seriously the Fourth Amendment's protection of possessory interests as well as privacy interests. See *supra*, at 143. The Court today eliminates a rule designed to further possessory interests on the ground that it fails to further privacy interests. I cannot countenance such constitutional legerdemain.

## II

Fortunately, this decision should have only a limited impact, for the Court is not confronted today with what lower courts have described as a "pretextual" search. See, *e. g.*, *State* v. *Lair*, 95 Wash. 2d 706, 717–718, 630 P. 2d 427, 434 (1981) (en banc) (holding pretextual searches invalid). For example, if an officer enters a house pursuant to a warrant to search for evidence of one crime when he is really interested only in seizing evidence relating to another crime, for which he does not have a warrant, his search is "pretextual" and the fruits of that search should be suppressed. See, *e. g.*, *State* v. *Kelsey*, 592 S. W. 2d 509 (Mo. App. 1979) (evidence suppressed because officers, who had ample opportunity to ob-

tain warrant relating to murder investigation, entered the premises instead pursuant to a warrant relating to a drug investigation, and searched only the hiding place of the murder weapon, rather than conducting a "top to bottom" search for drugs). Similarly, an officer might use an exception to the generally applicable warrant requirement, such as "hot pursuit," as a pretext to enter a home to seize items he knows he will find in plain view. Such conduct would be a deliberate attempt to circumvent the constitutional requirement of a warrant "particularly describing the place to be searched, and the persons or things to be seized," and cannot be condoned.

The discovery of evidence in pretextual searches is not "inadvertent" and should be suppressed for that reason. But even state courts that have rejected the inadvertent discovery requirement have held that the Fourth Amendment prohibits pretextual searches. See *State* v. *Bussard*, 114 Idaho 781, 788, n. 2, 760 P. 2d 1197, 1204, n. 2 (1988); *State* v. *Kelly*, 718 P. 2d 385, 389, n. 1 (Utah 1986). The Court's opinion today does not address pretextual searches, but I have no doubt that such searches violate the Fourth Amendment.[4]

### III

The Fourth Amendment demands that an individual's possessory interest in property be protected from unreasonable governmental seizures, not just by requiring a showing of probable cause, but also by requiring a neutral and detached

---

[4] The Court also does not dispute the unconstitutionality of a search that goes "so far astray of a search for the items mentioned in the warrant that it [becomes] a general exploratory search for any evidence of wrongdoing that might be found." *United States* v. *Tranquillo*, 330 F. Supp. 871, 876 (MD Fla. 1971). Indeed, the Court reiterates that "converting specific warrants into general warrants" is unconstitutional and emphasizes the need for scrupulous adherence to the requirements that warrants particularly describe the place to be searched and the things to be seized and that a warrantless search "be circumscribed by the exigencies which justify its initiation." *Ante*, at 139–140.

magistrate to authorize the seizure in advance. The Court today ignores the explicit language of the Fourth Amendment, which protects possessory interests in the same manner as it protects privacy interests, in order to eliminate a generally accepted element of the plain-view doctrine that has caused no apparent difficulties for law enforcement officers. I am confident, however, that when confronted with more egregious police conduct than that found in this case, *ante*, at 130–131, such as pretextual searches, the Court's interpretation of the Constitution will be less parsimonious than it is today. I respectfully dissent.

## APPENDIX A

## STATES THAT HAVE ADOPTED THE INADVERTENT DISCOVERY REQUIREMENT

Ala.     *Taylor* v. *State*, 399 So. 2d 881, 892 (Ala. 1981)

Alaska  *Deal* v. *State*, 626 P. 2d 1073, 1079 (Alaska 1980)

Ariz.    *State* v. *Ault*, 150 Ariz. 459, 464, 724 P. 2d 545, 550 (1986)

Ark.     *Johnson* v. *State*, 291 Ark. 260, 263, 724 S. W. 2d 160, 162 (1987)

Colo.    *People* v. *Cummings*, 706 P. 2d 766, 771 (Colo. 1985)

Conn.    *State* v. *Hamilton*, 214 Conn. 692, 701, 573 A. 2d 1197, 1201 (1990)

D. C.    *Gant* v. *United States*, 518 A. 2d 103, 107 (DC App. 1986)

Fla.     *Hurt* v. *State*, 388 So. 2d 281, 282–283 (Fla. App. 1980), review denied, 399 So. 2d 1146 (Fla. 1981)

Ga.  *Mooney* v. *State*, 243 Ga. 373, 383–384, 254 S. E. 2d 337, 346, cert. denied, 444 U. S. 886 (1979)

Haw.  *State* v. *Barnett*, 68 Haw. 32, 35, 703 P. 2d 680, 683 (1985)

Ill.  *People* v. *Madison*, 121 Ill. 2d 195, 208, 520 N. E. 2d 374, 380–381, cert. denied, 488 U. S. 907 (1988)

Ind.  *Clark* v. *State*, 498 N. E. 2d 918, 921 (Ind. 1986)

Iowa  *State* v. *Emerson*, 375 N. W. 2d 256, 259 (Iowa 1985)

Kan.  *State* v. *Doile*, 244 Kan. 493, 497, 769 P. 2d 666, 669 (1989)

Ky.  *Patrick* v. *Commonwealth*, 535 S. W. 2d 88, 89 (Ky. 1976)

La.  *State* v. *Stott*, 395 So. 2d 714, 716 (La. 1981)

Me.  *State* v. *Cloutier*, 544 A. 2d 1277, 1281, n. 4 (Me. 1988)

Md.  *Wiggins* v. *State*, 315 Md. 232, 251–252, 554 A. 2d 356, 365 (1989)

Mass.  *Commonwealth* v. *Cefalo*, 381 Mass. 319, 330–331, 409 N. E. 2d 719, 727 (1980)

Mich.  *People* v. *Dugan*, 102 Mich. App. 497, 503–505, 302 N. W. 2d 209, 211–212 (1980), cert. denied, 455 U. S. 927 (1982)

Minn.  *State* v. *Buschkopf*, 373 N. W. 2d 756, 768 (Minn. 1985)

Miss.  *Smith* v. *State*, 419 So. 2d 563, 571 (Miss. 1982), cert. denied, 460 U. S. 1047 (1983)

Mo.  *State* v. *Clark*, 592 S. W. 2d 709, 713 (Mo. 1979), cert. denied, 449 U. S. 847 (1980)

Mont.   *State* v. *Hembd,* 235 Mont. 361, 368–369, 767 P. 2d 864, 869 (1989)

Neb.   *State* v. *Hansen,* 221 Neb. 103, 108–109, 375 N. W. 2d 605, 609 (1985)

Nev.   *Johnson* v. *State,* 97 Nev. 621, 624, 637 P. 2d 1209, 1211 (1981)

N. H.   *State* v. *Cote,* 126 N. H. 514, 525, 526, 493 A. 2d 1170, 1177–1178 (1985)

N. J.   *State* v. *Bruzzese,* 94 N. J. 210, 237–238, 463 A. 2d 320, 334–335 (1983), cert. denied, 465 U. S. 1030 (1984)

N. M.   *State* v. *Luna,* 93 N. M. 773, 779, 606 P. 2d 183, 188 (1980)

N. Y.   *People* v. *Jackson,* 41 N. Y. 2d 146, 150–151, 359 N. E. 2d 677, 681 (1976)

N. C.   *State* v. *White,* 322 N. C. 770, 773, 370 S. E. 2d 390, 392, cert. denied, 488 U. S. 958 (1988)

N. D.   *State* v. *Riedinger,* 374 N. W. 2d 866, 874 (N. D. 1985)

Ohio   *State* v. *Benner,* 40 Ohio St. 3d 301, 308, 533 N. E. 2d 701, 709–710 (1988), cert. denied, 494 U. S. 1090 (1990)

Okla.   *Farmer* v. *State,* 759 P. 2d 1031, 1033 (Okla. Crim. App. 1988)

Ore.   *State* v. *Handran,* 97 Ore. App. 546, 550–551, 777 P. 2d 981, 983, review denied, 308 Ore. 405, 781 P. 2d 855 (1989)

Pa.   *Commonwealth* v. *Davidson,* 389 Pa. Super. 166, 175, 566 A. 2d 897, 901 (1989)

R. I.    *State* v. *Robalewski*, 418 A. 2d 817, 824 (R. I. 1980)

S. C.    *State* v. *Culbreath*, 300 S. C. 232, 237, 387 S. E. 2d 255, 257 (1990)

S. D.    *State* v. *Albright*, 418 N. W. 2d 292, 295 (S. D. 1988)

Tenn.    *State* v. *Byerley*, 635 S. W. 2d 511, 513 (Tenn. 1982)

Tex.    *Stoker* v. *State*, 788 S. W. 2d 1, 9 (Tex. Crim. App. 1989) (en banc)

Vt.    *State* v. *Dorn*, 145 Vt. 606, 620–621, 496 A. 2d 451, 459–460 (1985)

Va.    *Holloman* v. *Commonwealth*, 221 Va. 947, 949, 275 S. E. 2d 620, 621–622 (1981)

Wash.    *State* v. *Bell*, 108 Wash. 2d 193, 196, 737 P. 2d 254, 257 (1987)

W. Va.    *State* v. *Moore*, 165 W. Va. 837, 852–853, 272 S. E. 2d 804, 813–814 (1980)

Wis.    *State* v. *Washington*, 134 Wis. 2d 108, 119–121, 396 N. W. 2d 156, 161 (1986)

Wyo.    *Jessee* v. *State*, 640 P. 2d 56, 63 (Wyo. 1982)

## APPENDIX B

## UNITED STATES COURTS OF APPEALS THAT HAVE ADOPTED THE INADVERTENT DISCOVERY REQUIREMENT

CA1:    *United States* v. *Caggiano*, 899 F. 2d 99, 103 (1990)

CA2:    *United States* v. *Barrios-Moriera*, 872 F. 2d 12, 16, cert. denied, 493 U. S. 953 (1989)

CA3:   *United States* v. *Meyer,* 827 F. 2d 943, 945 (1987)

CA4:   *Tarantino* v. *Baker,* 825 F. 2d 772, 777, n. 3 (1987)

CA5:   *Crowder* v. *Sinyard,* 884 F. 2d 804, 826, n. 30 (1989), cert. pending, No. 89–1326

CA6:   *United States* v. *Poulos,* 895 F. 2d 1113, 1121 (1990)

CA7:   *United States* v. *Perry,* 815 F. 2d 1100, 1105 (1987)

CA8:   *United States* v. *Peterson,* 867 F. 2d 1110, 1113 (1989)

CA9:   *United States* v. *Holzman,* 871 F. 2d 1496, 1512 (1989)

CA10:  *Wolfenbarger* v. *Williams,* 826 F. 2d 930, 935 (1987)

CA11:  *United States* v. *Bent-Santana,* 774 F. 2d 1545, 1551 (1985)

CADC:  *In re Search Warrant Dated July 4, 1977, for Premises at 2125 S Street, Northwest, Washington, D. C.,* 215 U. S. App. D. C. 74, 102, 667 F. 2d 117, 145 (1981), cert. denied, 456 U. S. 926 (1982)