McMILLAN, Judge.
This is an appeal from a conviction for theft of property.
The appellant, Jeffery Allen Smith, pleaded not guilty to two counts of theft of property in the first degree. After his motion to suppress evidence in the form of certain items seized from his garage was denied, he preserved this issue for appeal and entered a plea of guilty. He was sentenced to 10 years’ imprisonment and was ordered to pay $50 to the crime victims’ compensation fund, $9,081.79 in restitution, and the costs of court.
Evidence at the suppression hearing tended to show that on June 23, 1992, the appellant reported to police a burglary of his garage, from which some tools had been taken. That same day, sheriffs deputies Euell Gay and Sidney Yarbrough inspected the garage and made an offense report. The appellant then filed a claim with the insurance company that had issued his homeowner’s insurance and received more than $9,000 in insurance proceeds to cover this loss. On August 7,1992, Officer Gay, accompanied by Officer Jimmy Arrington, returned to the appellant’s home. There was conflicting testimony as to the subsequent events.
The appellant’s wife testified as follows: When she saw the officers arrive at approximately 8:00 a.m. she was not dressed, so she opened a bay window in order to talk to them. She never heard them knock. She told them that the appellant was not at home, and the officers said that they had reason to believe, based on a telephone call, that the tools reported stolen were hidden “in the metal building that was [next] to the house.” She said that they also told her that they had a videotape of the appellant returning these items to the garage, and they showed her photograph negatives of the allegedly stolen tools. The wife testified that when she saw that the officers were not leaving, she got dressed and went outside. The officers then asked her if they could look in the garage. She said she asked them “many, many times” to leave and finally, in order to get them to do so, she gave Officer Arrington permission to take pictures of the garage. The officers were at the house for approximately two or two and one-half hours. Before leaving to obtain the warrant, they told her that she could be charged as an accessory and that her children could be taken from her custody by the Department of Human Resources, if she did not give them permission to search the garage. On cross-examination, she identified the side of the house that faced a nearby road as the “front.”
The officers testified as follows: They arrived at the appellant’s house at about 9:00 or 9:15 a.m. as a follow up, to determine whether there was any new information in the case. They parked on the west side of the house and knocked on the door on that side. Although there was a car parked in the driveway, no one answered their knock. They then proceeded to a second door, also on the west side of the house, and rang the doorbell. When there still was no answer, Officer Arrington started to walk around to what he identified as the “front” of the house, which he further described as the side nearest a school. In the process, he looked through a window in the attached garage and *1314 recognized some of the items that the appellant had previously reported as stolen. Officer Gay joined him, and the appellant’s wife then came out and asked them to leave. They complied but returned later with a search warrant and seized a number of tools from the garage and from an outbuilding. The officers testified that they did not threaten the appellant’s wife or make any statements to her with regard to videos, telephone calls or pictures, and that they did not recall her asking them to leave. They said that they had no reason to believe that the items reported stolen would be in the garage prior to observing them there. They were at the house about 30 to 45 minutes before leaving to obtain the warrant.
I.
The appellant contends that the search warrant obtained by the officers was invalid because, he says, it was based on information that was obtained in violation of the Fourth Amendment. He argues that he took precautions, such as posting “No Trespassing” and “No Parking” signs on a tree near the garage, which evidenced a special interest in privacy, and that the officers therefore were acting illegally when they observed the items stored in his garage.
The State dobs not contend that the appellant lacked a legitimate general expectation of privacy, but argues that the officers’ actions were justified because, it says, the appellant placed these particular items in an area which fell under the “plain view” exception to the exclusionary rule. As set out in McCammon v. State, 499 So.2d 811 (Ala.Cr.App.1986), a warrantless seizure is authorized under the plain view exception if the following requirements are met: (1) the police officer’s initial intrusion must be lawful or he must be properly in a position from which he can view a particular area; (2) the officer must inadvertently discover the incriminating evidence — in other words, he cannot know the location of incriminating evidence in advance and intend to seize it; and (3) it must be immediately apparent to the police that the items observed may be contraband or evidence of a crime or otherwise subject to seizure.
As to the first requirement, McVickers v. State, 551 So.2d 1130 (Ala.Cr.App.1989), provides that officers who are pursuing an “investigative mission” may enter onto private property. The appellant argues that the officers “exceeded the cope of thefir] license” because, he argues, since he was not home, their purpose (i.e., to interview him) could not have been advanced by such conduct.” However, the appellant does not say how the officers exceeded their authority by following up on the burglary report in person, rather than by telephoning or writing him. Viewed in the light most favorable to the State, Giles v. State, 440 So.2d 1237 (Ala.Cr.App.1983), there was sufficient evidence from which the trial court could have determined that the officers’ initial intrusion was lawful.
The appellant also argues that the officers had no legitimate reason to be at the particular location from which they made their observation.
“When police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage point are not covered by the Fourth Amendment.”
W. LaFave, Search and Seizure, § 2.3(f) (2d ed. 1987). The appellant argues that by circling the house, the officers failed to limit themselves to a route which a visitor would be expected to use.
However, there was conflicting evidence as to which door was actually the “front” door of the appellant’s house, so that in the present ease, the customary route that would be used by a visitor is not altogether clear. There also is conflicting authority on the question whether, when police get no response to their knocking and ringing, they are still required to limit themselves to the usual visitor’s path. See W. LaFave, Search and Seizure, supra, citing State v. Lyons, 167 Ga.App. 747, 307 S.E.2d 285 (1983) (proper for officer investigating animal complaint to go to back door, from which he saw marijuana plants, because he was “unable to elicit a response at the front door of a residence reasonably believed to be occupied”); Gil *1315 reath v. State, 247 Ga. 814, 279 S.E.2d 650 (1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982), (where no answer at front door, proper to go to side door and enter screened porch); but see Morsman v. State, 360 So.2d 137 (Fla. 2nd DCA 1978), writ dismissed, 394 So.2d 408 (Fla.1981) (when no one answered door, officer walked to rear of house and saw marijuana plants; search held illegal absent a showing the back yard “is used for commercial purposes and subject to a constant stream of visitors or customers”). Under the circumstances of this ease, in which the customary path used by a visitor and what is the “front” and “back” of the house is not clear, and viewing the evidence in the light most favorable to the State, Giles v. State, we conclude that the officers were properly at the point from which they made their observation.
As to the second requirement, that the authorities discover the evidence “inadvertently,” Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), holds that inadvertence is no longer required:
“The Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view even though the discovery of the evidence was not inadvertent. Although inadvertence is a characteristic of most legitimate plain view seizures, it is not a necessary condition.”
As to the third requirement, that the items observed must be immediately apparent as subject to seizure, the officers testified that they recognized certain items reported as stolen among those stored in the appellant’s garage. Their judgment as to the incriminating nature of the evidence was affirmed when they obtained a search warrant, pursuant to which the items were seized. As a warrantless search would have been proper under the case law cited heretofore; clearly, then, the officers’ mere observation was not a violation of the Fourth Amendment.
II.
The appellant contends that the trial court erred in refusing to admit evidence of a sign that he had posted on his house, which purported to give notice to all “Public Servants” not to trespass and to contact him only by mail. He argues that the sign was further evidence of his desire for privacy.
However, as noted previously, this case turns on the plain view exception to the exclusionary rule. The State did not dispute that the appellant had a reasonable expectation of privacy in the general premises but instead contended that because he had placed the .items in question in plain view, the officers’ observation had not violated the Fourth Amendment. Therefore, the trial court properly determined that the sign was not material or relevant in the present case.
AFFIRMED.
All Judges concur.