| t CANNIZZARO, J.,
dissents with
reasons.
I respectfully dissent from the majority opinion. I would affirm the trial court judgment.
La.C.Cr.P. art. 215.1(A) provides that “[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” La.C.Cr.P. art. 215.1(B) further states that “[wjhen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon.” The officer may also search the person, if the officer reasonably suspects that the person has possession of a dangerous weapon. Id.
In the instant case the police were responding to a report that a male was slumped over the steering wheel of an automobile. When the officers arrived at the location of the vehicle, the officers approached the vehicle, tapped on the window, and asked the occupant whether he needed medical services. The occupant, Mr. Kelly, the defendant in this case, told the officers that he did not need medical attention and explained that he was “just there.” The officers then asked to see his driver’s license and the registration form for the vehicle. When a search was performed on the officers’ computer, they learned that Mr. Kelly had a suspended 1 ^driver’s license and that the vehicle was not registered to him. At that point the officers asked Mr. Kelly to exit the vehicle and advised him that he was under arrest for driving with a suspended license. When Mr. Kelly exited the vehicle, the officers saw in plain view next to the driver’s seat a clear bag containing a white substance that they believed to be cocaine and a second bag containing pills that the officers believed to be Vicodin. Mr. Kelly was then arrested for drug violations. The substance in the plastic bag was ultimately tested and determined to be methamphetamine.
The majority opinion is based on the premise that there was no probable cause to arrest Mr. Kelly for driving with a suspended license. Therefore, the majority concludes that the police officers had no right to ask Mr. Kelly to exit the vehicle. *1022 The majority then reasons that because the drugs that were found would not have been in plain view if Mr. Kelly had remained seated in the vehicle, the evidence seized was obtained illegally.
I strongly disagree. Even if probable cause for the arrest on the charge of driving with a suspended license did not exist, the police officers clearly had a right to ask Mr. Kelly to exit the vehicle. La. C.Cr.P. art. 251.1(B). The fact that the officers had been called to the scene to investigate a man slumped over the steering wheel of a vehicle with out-of-state license plates that was not registered to him certainly was sufficient to raise reasonable suspicion on the part of the officers. Additionally, when the man was unable to explain why he was in the vehicle or even how he got there, there was further cause for reasonable suspicion. The lack of an explanation regarding Mr. Kelly’s presence in a vehicle that was not his could clearly give rise to a reasonable suspicion that Mr. Kelly was in possession of a vehicle without the proper authority, particularly when he had a key in the ignition.
| oOnce the officers had reasonable suspicion that Mr. Kelly might have been committing a crime and that they might be in danger, they had the right to at least frisk Mr. Kelly’s outer clothing under La. C.Cr.P. art. 215.1(B). Thus, they had the right to ask him to exit the vehicle. The police officer who testified in this case was never asked whether he was concerned for his safety. Nevertheless, I believe that we can infer that a police officer would reasonably believe he might be in potential danger in a situation where a person is not acting as one would customarily expect a person to act, where the person is in a vehicle that is not his, and where the person has no reasonable explanation for how he got into the vehicle or why he was there other than he was “just there.” Police officers are trained to recognize suspicious activity for the purpose of protecting the citizenry. I believe that the police officers here recognized that Mr. Kelly’s activity was very suspicious, and I believe that we can conclude that they should have realized, and did realize, that they were in a potentially dangerous situation.
It is possible that the officers’ investigation could have revealed that Mr. Kelly was simply asleep in the vehicle, but the police officers still had the right, and the duty, to investigate the call they received. Although Mr. Kelly stated that he did not need medical attention, the circumstances in this case were sufficiently suspicious to give the officers the right, and impose upon them the duty, to investigate the situation further. Police officers are neither lawyers nor judges, and they must make instantaneous decisions without the benefit of the cool, deliberate judgments that lawyers and judges have time to make. Courts should apply reasonable common sense standards to street encounters between suspicious citizens and police officers.
I would find that the issue in this case is not whether the vehicle in which Mr. Kelly was sitting slumped over the steering wheel was, in fact, being operated by him. The issue is whether the police officers had sufficient reasonable | ¿suspicion to ask Mr. Kelly to step out of the vehicle based on the suspicious facts and Mr. Kelly’s failure to explain his actions with more than the comment that he was “just there.” I believe that the evidence clearly shows that the police officers did have such reasonable suspicion and that once Mr. Kelly exited the vehicle, the police officers had the right to seize any evidence that was in plain sight without the necessity of a search warrant. See, e.g., Horton v. Cali *1023 fornia, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).