OPINION
{¶ 1} Appellant, Armand Jones, appeals from his conviction for possession of cocaine pursuant to his no-contest plea. The facts underlying his conviction are set out in the parties' briefs and are not in dispute. *Page 2 
 {¶ 2} On August 28, 2006, Dayton Police Officer Jeffrey Watkins and his partner, Officer Tipton, were dispatched to 311 Leland Avenue in Dayton on a report of a kidnapping. An unidentified male caller reported in a whisper to the 911 operator that his 18-year-old brother had been kidnapped and that he was inside the 331 Leland Avenue residence.
 {¶ 3} Officer Tipton went to the front door while Officer Watkins went to the rear of the residence. En route to the rear, Officer Watkins observed an open side door, but a closed screen door, with a surveillance camera aimed at the side door. In his experience, this "set up" was often used when operating a drug house. Officer Watkins looked through the open door and saw Jones and another individual, later identified as Terry Taylor, sitting at a kitchen table, conversing, but they did not see him.
 {¶ 4} Officer Tipton knocked at the front door and Officer Watkins heard Jones tell another individual in the living room, later identified as Anthony Deloach, to tell the person at the door to come to the side door. (Tr. 9.) The officers then heard a male voice yell, "Come in the side door!" (Id.) At that time, Officer Watkins entered through the side screen door, announced himself as a police officer, and ordered everyone to show their hands. (Id.)
 {¶ 5} The occupants immediately cooperated, and Officer Tipton observed Deloach discard a bag of what he immediately recognized as crack cocaine on the floor. (Tr. 10.) The three individuals were secured and the officers then did a protective sweep of the home to make sure there were not any other individuals in the home. (Tr. 12, 21-22.) At that time, Officer Tipton observed a white plate inside an open cabinet in the kitchen, which contained a white residue which Tipton immediately recognized as *Page 3 
cocaine and a razor blade with white residue on it in plain view. (Tr. 10-11, 61-62.) The residue field tested positive for crack cocaine. A monitor was also observed in the kitchen that linked to the surveillance camera aimed at the side door. (Tr. 7.)
 {¶ 6} The residence was cleared and a search warrant was obtained to search the residence. No kidnapping victim was ever found. (Tr. 13.) However, three baggies of crack cocaine were found in an open hall closet off of the kitchen on a shelf. (Tr. 32.) Officers also located documents demonstrating that Jones rented the residence and the utility bills were also addressed to Jones at 331 Leland. (Tr. 36, 49.) Jones was arrested for possession of drugs, possession of criminal tools and weapon possession. (Tr. 13.)
 {¶ 7} Detective David House Mirandized Jones, who then told House he wanted to talk to his attorney. As House took notes on a notepad, Jones volunteered that, "he really didn't live there," that "is just where he hangs out," and that the "sh** is not his." (Tr. 43-46.)
 {¶ 8} Prior to trial, Jones moved to suppress the cocaine discovered in the house by the police as well as any statements given by him as a product of his arrest. The trial court overruled Jones' motions, finding that the search was justified because of exigent circumstances and Jones' statements were admissible because they were voluntarily made.
 {¶ 9} In his only assignment of error, Jones argues that the police lacked probable cause to believe anyone in Jones' residence was the victim of a kidnapping and in need of immediate assistance. Jones notes that nothing the police observed upon their arrival at his residence corroborated the anonymous caller's claim that his *Page 4 
brother had been kidnapped and was inside the Leland Avenue address. Jones notes that the police discovered an open side door to the residence and no unusual sounds emanating from inside. Instead, he notes the police observed a television monitor aimed at the side door similar to ones seen at drug houses and that is why they entered his home. Jones argues that Officer Watkins' entry was therefore unlawful and the observations of the police of drug activity should have been suppressed as well as the drugs recovered.
 {¶ 10} The State, for its part, argues that the police had a right to enter the Leland Avenue residence in search of the alleged kidnap victim, and their observations inside of drug activity should be admissible as well as the drugs recovered. Alternatively, the State argues that Officer Watkins entered upon invitation and, therefore, the observations he made of drug activity were made in plain view and not the product of an unlawful search.
 {¶ 11} We find the State's alternative argument more persuasive. Officer Watkins was told by Jones to come in the side door and upon his entry he observed Deloach discard crack cocaine. Watkins' observations of the drugs and a razor blade inside the open kitchen cabinet were made in plain view. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301
(1990). The rest of the drugs recovered were recovered pursuant to a search warrant. Appellant's assignment of error is Overruled.
 {¶ 12} The judgment of the trial court is Affirmed.
 DONOVAN, P.J., and FAIN, J., concur. *Page 5 
Mathias H. Heck, Jr., Johnna M. Shia, Jeremiah J. Denslow, Hon. Gregory F. Singer. *Page 1