**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JUN 09 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50403 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00072-PSG-27 |
| v. | |
| ANDRANIK ALOYAN, AKA Ando, AKA Andy, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted May 6, 2016
Pasadena, California

Before: KOZINSKI, W. FLETCHER, and GOULD, Circuit Judges.

Andranik Aloyan appeals the denial of his motion to suppress evidence

gained in a search of his girlfriend's apartment, and he also appeals his convictions

for participation in a RICO conspiracy, attempted bank fraud, aggravated identity

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

theft, possession of fifteen or more unauthorized access devices, and possession of a firearm by a convicted felon. Aloyan further appeals his sentence. We affirm.

1.      The district court did not clearly err in determining that, under the totality of the circumstances, Aloyan's girlfriend voluntarily consented to the officers' entry. *See United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). It is significant that officers asked her if they could enter the apartment, and she verbally gave permission before fully opening the door. The police did not use an "unconstitutional ruse" to obtain entry because they accurately stated their purpose for entry: to speak with Aloyan. *Cf. United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990). The evidence was sufficient to determine that Aloyan's girlfriend consented, even though officers did not recall the exact words she used. *See United States v. Perez-Lopez*, 348 F.3d 839, 845 (9th Cir. 2003). And even if the officers exceeded the scope of consent by purporting to engage in a protective sweep into private areas of the house, the contraband was discovered in plain view in a place where police were lawfully entitled to be. *See Horton v. California*, 496 U.S. 128, 136–37 (1990).

2.      The district court did not abuse its discretion by allowing the government to present evidence of a January 2010 shooting in which Aloyan was allegedly involved to provide context for the relationship between Aloyan and a

coconspirator who testified against him. *See United States v. Serang*, 156 F.3d 910, 915 (9th Cir. 1998). The district court did not commit plain error affecting substantial rights by admitting photos of firearms besides the one for which he was charged. The district court did not abuse its discretion by excluding evidence that the firearm that Aloyan was charged with possessing was inoperable. The ability to operate the firearm was not relevant to the charge, *see United States v. Harris*, 792 F.2d 866, 868 (9th Cir. 1986) (citing 18 U.S.C. § 921(a)(3)), and the government did not open the door to this evidence nor did it imply the gun was unsafe in a manner that caused Aloyan undue prejudice.

3. When applying a sentencing enhancement for 50 or more victims, the district court clearly erred in finding that Aloyan's crimes affected 82 victims because he possessed account numbers belonging to 82 people on a USB drive. A victim is defined as "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1(b)(2) cmt. n.4(E) (2013). But mere possession is not use. *See, e.g.*, *Bailey v. United States*, 516 U.S. 137, 143 (1995). Aloyan did not object to this finding, however, so we review for plain error. Exhibit 153 from the sentencing proceedings shows that Aloyan used the account numbers of 28 different people who "actually had money moved around in their accounts or had actual loss from their accounts via checks written against

3

them or money transferred out via wire." The record also shows that Aloyan used account numbers to re-encode 22 Green Dot cards. While the record does not show whether those account numbers belonged to 22 different people such that Aloyan's crimes would have had exactly 50 victims, Aloyan has not produced evidence to the contrary, so he has not met his burden of showing prejudice. *See United States v. Olano*, 507 U.S. 725, 734–35 (1993) (defendant bears burden of showing prejudice on plain error).

4. The district court did not abuse its discretion by applying the sophisticated means enhancement. *United States v. Augare*, 800 F.3d 1173, 1174–76 (9th Cir. 2015). Aloyan's use of technology to re-encode Green Dot cards went above and beyond "garden-variety" identity fraud.

5. The district court did not abuse its discretion by rejecting a two- or four-level minor or minimal role mitigation. "[M]erely being less culpable than one's co-participants does not automatically result in minor status." *United States v. Andrus*, 925 F.2d 335, 338 (9th Cir. 1991). Aloyan "certainly was not the mastermind, and the overall scheme to defraud could have operated without him. But he joined the conspiracy, and he played a key role by" obtaining bank profiles from an insider he knew at Bank of America, setting up fraudulent online transfers,

4

and developing customer profiles to use to impersonate people. *United States v. Laurienti*, 611 F.3d 530, 552 (9th Cir. 2010).

**AFFIRMED.**