PEOPLE v MOORE (ON REMAND)

Docket No. 130516. Submitted July 24, 1990, at Lansing. Decided September 10, 1990; approved for publication November 19, 1990, at 9:01 A.M.

Terrance R. Moore was arrested for possession of cocaine after Detroit police officers, responding to a radio report that gunshots had been heard inside Moore's house, discovered a package of suspected cocaine in the rafters of the basement while conducting a search of the house with the defendant's consent for possible shooting victims. The Detroit Recorder's Court, Gershwin A. Drain, J., suppressed evidence of the package of cocaine on the basis that the package was seized without a warrant and did not qualify for admission under the plain view doctrine because its discovery was not inadvertent. The people appealed to the Court of Appeals, which, in an unpublished opinion per curiam, affirmed (Docket No. 106275). The Supreme Court denied leave to appeal, 433 Mich 922 (1989). After granting certiorari, the United States Supreme Court vacated the judgment of the Court of Appeals and remanded the case to the Court of Appeals for further consideration in light of Horton v California, 495 US —; 110 S Ct 2301; 110 L Ed 2d 112 (1990). Michigan v Moore, — US —; 110 S Ct 3208; 110 L Ed 2d 656 (1990).

The Court of Appeals held:

The cocaine, discovered in plain view during a lawful search of the defendant's house conducted with the defendant's consent, was validly seized under a recognized exception to the warrant requirement. The fact that the police had prior reason to believe the item would be discovered did not invalidate the seizure.

Reversed and remanded for trial.

REFERENCES

Am Jur 2d, Searches and Seizures §§ 42, 46, 101.

Validity of seizure under Fourth Amendment "plain view" doctrine —Supreme Court cases. 75 L Ed 2d 1018.

Officer's ruse to gain entry as affecting admissibility of plain-view evidence—modern cases. 47 ALR4th 425.

1. Evidence — Searches and Seizures — Seizure Without a Warrant — Plain View Doctrine.

The Fourth Amendment does not prohibit the seizure without a warrant of articles in plain view whose incriminating character is immediately apparent and to which the police had a lawful right of access, regardless of whether the police had prior reason to believe the item would be discovered (US Const, Am IV).

2. Evidence — Searches and Seizures.

The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of Research, Training and Appeals, for the people.

*Steven Fishman* and *Michael F. Bakaian,* for the defendant.

ON REMAND

Before: Doctoroff, P.J., and Maher and Reilly, JJ.

Per Curiam. In our previous opinion, *People v Moore,* unpublished opinion per curiam of the Court of Appeals, decided June 15, 1989 (Docket No. 106275), we affirmed the trial court's order suppressing evidence seized without a warrant under the plain view doctrine on the basis that the evidence seized was not discovered "inadvertently." We further concluded that the search without a warrant was not justified by exigent circumstances. The United States Supreme Court vacated our judgment and remanded this case for further consideration in light of its recent decision in

*Horton v California,* 495 US —; 110 S Ct 2301; 110 L Ed 2d 112 (1990). We now reverse and remand for trial. *Michigan v Moore,* — US —; 110 S Ct 3208; 110 L Ed 2d 656 (1990).

The relevant facts were set forth in our earlier opinion:

> On the night of defendant's arrest, the Detroit Police Department broadcast a radio run indicating that gun shots had been heard inside a "known dope house." Nine police officers responded to the call. While some uniformed officers went to the front door of the house, three plainclothes officers moved to the back of the house to prevent the possible escape of any occupants. From their position immediately outside the back door, the officers were able to see inside the house through a window. As the uniformed officers knocked on the front door, the three plainclothes officers witnessed defendant carry a package down the basement stairs. Based on their prior experience, the officers recognized the package as a kilo of cocaine wrapped for overseas shipment. After a short time, the defendant returned empty handed from the basement and went to answer the front door. The three plainclothes officers then returned to the front of the house.
>
> After answering the front door, defendant spoke with the uniformed officers and denied that anyone had been shot inside the house. Although defendant invited the police inside the house to determine whether there had been a shooting, defendant did not consent to a general search of the house. Once inside the house, several of the officers began to search the main and second floors of the house. However, one of the plainclothes officers went directly into the basement. At the suppression hearing, this officer testified that although his primary purpose for entering the basement was to search for possible shooting victims, he was also aware that the defendant had taken

the suspected cocaine into the basement and he believed it was still there. Once in the basement, the officer shined his flashlight up toward the ceiling and noticed the suspected cocaine package lodged in the rafters. This package was seized and defendant was subsequently arrested.

Relying on the United States Supreme Court's plurality decision in *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), we unanimously concluded that the inadvertence limitation under the plain view doctrine was not satisfied because the officer fully expected the cocaine to be in the basement, and that his decision to search the basement, and in particular the "rafters," was partially motivated by a desire to locate the cocaine.

In *Horton, supra,* the police were executing a search warrant authorizing them to search for the proceeds of an armed robbery, including three rings. During the search, the police discovered weapons the victim had described as having been used to commit the crime—a machine gun, two stun guns, and a set of handcuffs. One of the officers testified that, while he was searching for the proceeds of the crime, he was also interested in locating other evidence connecting defendant to the armed robbery. In a seven to two decision, the Supreme Court held that the Fourth Amendment does not prohibit the seizure of articles in plain view without warrants whose incriminating character is "immediately apparent" and to which the police had a lawful right of access, regardless of whether the police had prior reason to believe the item would be discovered. *Horton, supra* at 2309-2311. In writing for the majority, Justice Stevens rejected the inadvertence limitation set forth by Justice Stewart in *Coolidge* because it was not

necessary to decide the case and, thus, was not an essential part of Justice Stewart's formulation of the plain view doctrine. *Id.* at 2308. Justice Stevens went on to note:

> The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement. [*Id.* at 2309.]

In this case the cocaine seized from defendant's house was discovered during a lawful search for possible shooting victims pursuant to defendant's consent, a valid exception to the warrant requirement. Additionally, the cocaine package was in plain view, and its incriminating character was immediately apparent to the officer. Under these circumstances, the seizure of the cocaine was permitted by the plain view doctrine. *Horton, supra.*

Reversed and remanded for trial.