UNITED STATES of America

v.

Norvilien BORNO, Nicolas Polynice, and Jean Polynice.

No. 96–301–CR–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 25, 1996.

James F.E. Carbia, Federal Public Defender's Office, Middle District of Florida, Tampa, FL, for Toussaint Saintvale.

Stephen M. Crawford, Law Office of Stephen M. Crawford, Tampa, FL, for Norvilien Borno.

John Edward Fernandez, Law Office of John E. Fernandez, Tampa, FL, for Nicolas Polynice.

Lewis Edmund Garlisi, Law Office of Lewis E. Garlisi, Tampa, FL, for Jean Polynice.

Jeffrey J. Del Fuoco, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, for the U.S.

### ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTIONS TO SUPPRESS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant NICOLAS POLYNICE's (hereinafter N. POLYNICE) (1) motion to suppress all evidence obtained during the search of the defendants' residence, 719 31st Avenue East, Bradenton, Florida (Docket No. 34), (2) motion to suppress firearms and ammunition obtained during the search of said residence and Defendant NORVILIEN BORNO's (hereinafter BORNO) Toyota Forerunner (Docket No. 36), and (3) motion to suppress cash found in N. POLYNICE's gray Honda Accord (Docket No. 36) (accompanying memorandum, Docket No. 43). The other defendants, BORNO and JEAN POLYNICE (hereinafter J. POLYNICE), join in these motions (Docket Nos. 41–42). The Court heard testimony, reviewed exhibits, and considered the arguments of counsel in a suppression hearing held on November 18, 1996.

In response to the defendants' motions to suppress, the Government initially moved to dismiss the motions as untimely. (Docket No. 46). However, at the suppression hearing, the Court effectively denied this motion to dismiss. The Court would also add to its oral ruling that the Government was put on notice of the defendants' intent to seek suppression at a status conference held in open court on November 4, 1996. Once testimony began at the suppression hearing, however, the Government advanced a memorandum on the merits. (Docket No. 48).

After due consideration of the testimony presented, the arguments of counsel, and relevant criminal procedure law, the Court grants in part and denies in part the motions to suppress. Although the Court orally ruled on the motions to suppress in open court on November 19, 1996, this Order is intended to supplement said rulings in greater detail.[1]

### FACTS

On or about September 10, 1996, a federal grand jury indicted Defendants BORNO, N. POLYNICE, and J. POLYNICE on three (3) offenses: (1) conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base, 21 U.S.C. §§ 841(a)(1), 846 (Count I); (2) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2 (Count VII); and (3) possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2 (Count VIII).[2]

Prior to the indictment, agents with the Drug Enforcement Administration (DEA) executed a search of the defendants' residence, described as "a single story duplex, containing two residences, concrete block in structure, with a pitched shingle roof," located at "719 31st Avenue East, Bradenton, Florida." Government's Exhibit Two (2). On August 30, 1996, Special Agent James Kenney applied for the search warrant before the Hon. Elizabeth A. Jenkins, U.S. Magistrate Judge. In his affidavit, Agent Kenney attested that, based on his training and experience, this residence was "being used for the manufacturing and processing of crack cocaine." *Id.* He therefore requested that the search warrant specify the following as items to be seized:

---

1. Defendants BORNO and N. POLYNICE pled guilty to counts one (1), seven (7), and eight (8) of the indictment subsequent to the Court's oral ruling. (Docket Nos. 64–65). Also subsequent to the ruling, Defendant J. POLYNICE pled guilty to count seven (7) of the indictment pursuant to a plea agreement (Docket Nos. 66–67). The Court accepted all these changes of pleas and adjudicated the defendants guilty.

2. A fourth defendant, TOUSSAINT SAINTVALE (hereinafter SAINTVALE), was indicted on the first six (6) of the indictment's eight (8) counts. Having pled guilty to some of these counts before a federal magistrate judge, Defendant SAINTVALE's plea is still pending approval by this Court. (Docket No. 37).

Any controlled substances, including ... cocaine powder and cocaine base, as well as any evidence of drug trafficking including, ... proceeds from drug sales, drug paraphernalia, drug ledgers, firearms or other weapons, and any other documents or records....

*Id.* The magistrate judge granted the application, but specifically deleted "firearms or other weapons" from the search warrant.[3] Government's Exhibit One (1).

On September 5, 1996, law enforcement executed the search. Two (2) agents: (1) knocked loudly on the front door, (2) shouted "police ... search warrant," (3) waited fifteen (15) to thirty (30) seconds, and (4) knocked and shouted again. Between knocks, at least one (1) agent could see shadow-like figures running as he looked through the smoky glass window in the door. Hearing no response to the second knock, the agents broke the door window, reached inside to unlock the door, and entered the residence.

Once inside the residence, the agents immediately detained all four (4) of the defendants, only one (1) of which, SAINTVALE, was specifically named in the search warrant application. Government's Exhibit Two (2). During the search, the agents then seized, among other things: controlled substances, various paraphernalia, cash, and a .357 Magnum handgun. Many of these items were hidden. With respect to the firearm, it was located in one of the bedrooms. Specifically, the firearm was hanging behind the bedroom door under a piece of clothing. On the opposite wall leaned a mattress, which was covering "freshly cooked" controlled substances. There was also a large amount of bundled cash within five (5) feet of the firearm.

On the grounds immediately surrounding the residence, the agents searched two (2) vehicles, only one (1) of which they had previously seen. The first vehicle was a maroon Toyota Forerunner. Although unknown to agents at the time of the search, this vehicle was owned by Defendant BORNO. Law enforcement seized a 9 millimeter (mm) handgun located in the Toyota's glove compartment. Agent Kenney testified that he had previously seen Defendant SAINTVALE drive this Toyota at a different location. Government's Exhibit Two (2), ¶ 15.

The other vehicle, witnessed by the agents for the first time, was a gray Honda Accord. It was owned by Defendant N. POLYNICE. As with the Toyota, the ownership of the Honda was not established until sometime after the search. Searching the trunk, law enforcement seized some cash.

## DISCUSSION

*I. The Fourth Amendment.*

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. To be lawful, a search must be made pursuant to a warrant or the circumstances surrounding the search must meet one (1) of the recognized exceptions.

*A. Searching and Seizing "Things".*

■ With respect to a search warrant, a neutral and detached magistrate may issue one only "upon probable cause, supported by Oath or affirmation and *particularly describing* the Place to be searched, and the persons or *things* to be seized." *Id.* (emphasis added). Therefore, as a general rule, "things" not specifically mentioned in a search warrant may not be seized.

■ "Things" outside the scope of a search warrant may be seized only if the circumstances surrounding the search meet one of the recognized exceptions to the warrant requirement. One (1) of these exceptions is the "plain-view" doctrine. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

In *Horton,* a police officer obtained a search warrant from a magistrate judge. *Id.* at 131, 110 S.Ct. at 2304–05. The warrant permitted the officer to search the defendant's home for robbery proceeds, including certain stolen rings. *Id.* at 130–31, 110 S.Ct.

---

**3.** The magistrate judge drew a line through said phrase and subscribed her initials in parentheses just above it. Government's Exhibit One (1).

at 2304–05. Although the officer's affidavit referred to weapons used during the robbery, the magistrate judge did not list weapons or firearms as items to be seized on the search warrant. *Id.* at 131, 110 S.Ct. at 2304–05.

Searching the defendant's home, the officer failed to find any stolen property. *Id.* However, during the search, the officer found several firearms. *Id.* He seized only three (3) of the firearms, believing that the other firearms were not associated with criminal activity. *Id.* at 131 n. 1, 110 S.Ct. at 2305 n. 1.

The trial court denied the defendant's motion to suppress the three (3) firearms, and both the appellate court and the federal Supreme Court affirmed. *Id.* at 131, 110 S.Ct. at 2304–05. Applying the "plain-view" doctrine, the Court reasoned that "the items seized from [the defendant's] home were discovered during a lawful search authorized by a valid warrant." *Id.* at 142, 110 S.Ct. at 2310. Furthermore, "[w]hen [the three (3) firearms] were discovered, it was immediately apparent to the officer that they constituted incriminating evidence." *Id.* The Court rejected the defendant's argument that the firearms must be suppressed because their discovery was not inadvertent. *Id.* at 131, 110 S.Ct. at 2304–05.

■ Therefore, in order for a "thing" outside the scope of the search warrant to be constitutionally seized under the "plain-view doctrine": (1) law enforcement must be lawfully positioned upon viewing the evidence; and (2) it must be "immediately apparent" that the evidence is incriminating.

### B. The "Place" to be Searched.

■ Just as a search warrant must specify the "things" to be seized, it must also specify the "Place to be searched." U.S. Const. amend. IV. Generally, a "search warrant authorizing a search of a certain premises ... includes any vehicles located within its curtilage if the objects of the search might be located therein." *United States v. Gottschalk,* 915 F.2d 1459, 1461 (10th Cir.1990). Whether a vehicle is within a premise's "curtilage" depends on four (4) factors: "(1) the

proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature and uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987) (numbers added).

■ At least two (2) federal circuits limit the general rule that a warrant includes any vehicles located on the listed premise's curtilage by requiring the searching officer(s) to act "reasonably in assuming that the [vehicles searched are] under the control of the premises owner." *Gottschalk,* 915 F.2d at 1461. Although the *Gottschalk* court stated that this approach is rejected by the Fifth Circuit, the Eleventh Circuit's position on the issue is unclear. Finding the *Gottschalk* rule more sound, this Court chooses to follow the Seventh and Tenth Circuit's approach.

In *Gottschalk,* a DEA agent obtained a search warrant from a magistrate judge. *Id.* at 1459. Although this warrant authorized the search of a residence for controlled substances, it did not mention the defendant or his vehicle, a Cadillac. *Id.* at 1460. After searching the residence, the agents searched the Cadillac and seized weapons found therein. *Id.* Reversing the district court's suppression of the weapons, the circuit court held that the agents reasonably assumed that the defendant's vehicle was controlled by the homeowner. *Id.* at 1461. The court emphasized the following facts: (1) the agents discovered the Cadillac within the curtilage of the home at the time the search started; (2) the agents knew the Cadillac was not working and, therefore, had been at the home for a long time; (3) the agents had been informed by a reliable source that the homeowner and other occupants moved things in and out of the Cadillac; and (4) the keys left in the Cadillac's ignition made the vehicle and its compartments readily accessible to the homeowner. *Id.* at 1461–62.

Therefore, in order for a vehicle to be within the scope of a search warrant that omits it as a "Place to be searched": (1) the vehicle must be within the curtilage of the home; and (2) law enforcement must have a

reasonable belief that the vehicle is owned or controlled by the premises owner or other known occupant.

## II. The Firearm Seized from Defendant BORNO's Toyota Forerunner.

■ In the present case, the Court suppresses the 9 millimeter (mm) handgun [4] that was seized from Defendant BORNO's Toyota Forerunner. First, the Court concludes that the Toyota Forerunner was located within the curtilage of the residence. The testimony at the hearing reveals that the Toyota satisfies the *Dunn* criteria, in that it was parked off the street and located very close to the front door of the residence. Second, the DEA agents reasonably believed that the Toyota was controlled by a known occupant of the premises. Indeed, the agents previously saw the very same Toyota driven by Defendant SAINTVALE, a known occupant of 719 31st Avenue East. Therefore, the Toyota Forerunner was a lawful "Place to be searched."

■ Although the Toyota was within the scope of the search warrant's listed "Place," the 9mm handgun seized from the Toyota's glove compartment was not within the scope of the search warrant's listed "Things." Because the magistrate judge specifically excluded "firearms" from the search warrant, the DEA agents were entitled to seize the 9mm handgun only if it was in "plain-view."

The Court concludes that the circumstances surrounding the seizure of the 9mm handgun from the Toyota do not meet the "plain-view" exception. It is true that the DEA agents were lawfully positioned when they saw the 9mm handgun in the glove compartment. The fact that the handgun was somewhat concealed does not weaken this conclusion, in that "[t]he officers were entitled ... to open drawers, closets, containers, and other items that might conceal" the things listed on the search warrant. *United*

States v. Edwards, 885 F.2d 377, 389 (7th Cir.1989).

Although the agents were lawfully positioned, the incriminating nature of the 9mm handgun was not immediately apparent to them during the search. The handgun inside the Toyota's glove compartment was not proximately connected to any controlled substance or other contraband listed on the search warrant. Furthermore, although the DEA agents reasonably believed that Defendant SAINTVALE controlled the Toyota, they did not discover that it was owned by Defendant BORNO until after the search. Nothing Defendant BORNO said to the agents during the search provided any link between the contraband found in the residence and the contents of his Toyota. Therefore, the agents lacked probable cause to seize the 9mm handgun from the Toyota.

■ The Court also concludes that, as the owner of the Toyota, Defendant BORNO is the only defendant who has standing to seek suppression of its contents. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (holding that a vehicle passenger lacks standing to challenge the validity of its search). Therefore, the handgun is suppressed on Fourth Amendment grounds only as to Defendant BORNO.[5]

## III. The Cash Seized from Defendant N. POLYNICE'S Honda Accord.

■ The Court suppresses the cash seized from Defendant N. POLYNICE's Honda Accord. There are two (2) grounds for this suppression. First, although the Honda may have been located within the curtilage of the residence, any assumption on the part of the DEA that the Honda was controlled by a known occupant of the residence would have been unreasonable. Unlike the agents in *Gottschalk*, the agents in this case knew nothing about the Honda

---

4. This suppression also includes any ammunition found in the Toyota.

5. As the Court stated in open court, had this case gone to trial, the 9mm handgun would be excluded from the defendants' joint trial. The risk that the jury would wrongfully associate the handgun with Defendant BORNO substantially outweighs

the probative value of the handgun as offered against Defendants N. POLYNICE and J. POLYNICE. Fed.R.Evid. 403. Indeed, the probative value of the handgun is nominal, at best, given the fact that the POLYNICES are not charged with any firearm offense (i.e. 18 U.S.C. § 924).

prior to searching it. Contrary to the Toyota, the Honda had never been previously seen by the DEA agents until the day of the search. Therefore, the Honda was not a lawful "Place to be searched."

 Notwithstanding the Honda being outside the scope of the "Place to be searched," the Court's second reason for suppressing the cash relates to the "plain-view" exception. The Court concludes that the circumstances surrounding the seizure of the cash from the Honda do not meet the "plain-view" exception. First, the DEA agents were unlawfully positioned in a vehicle that was outside the scope of the search warrant. Furthermore, the cash's incriminating nature was not immediately apparent to the searching agents. Although the search warrant permitted the agents to look for "proceeds," there was an insufficient link between the controlled substances found inside the residence and the cash found inside the trunk of the Honda. Indeed, the agents had no knowledge of the Honda beyond its mere existence on the premises. Also, the testimony at the hearing fails to convince the Court that the cash was packaged in such a way as to resemble drug proceeds. Therefore, the cash was outside the scope of the search warrant and the DEA agents lacked probable cause to seize it.

 Just as Defendant BORNO was the only defendant who possessed standing to seek suppression of the Toyota's contents, Defendant N. POLYNICE is the only defendant who has standing to seek suppression of the cash seized from his vehicle, the Honda. Therefore, said cash is suppressed on Fourth Amendment grounds only as to Defendant N. POLYNICE.[6]

*IV. The Items Seized from the Residence.*

 The Court denies the defendants' motion to suppress all evidence obtained during the search of the defendants' residence.

First, the Court rejects the defendants' contention that the DEA agents failed to comply with the federal knock and announce statute, 18 U.S.C. § 3109 (1994). The testimony at the suppression hearing easily convinces the Court that the agents gave proper "notice of [their] authority and purpose." *Id.* Also, the defendants constructively "refused [to] admit[ ]" the DEA agents by their failure to respond within fifteen (15) to thirty (30) seconds after this notice. *Id.* The fact that at least one (1) officer saw shadow-like figures scampering inside the residence supports an inference that at least some of the defendants heard the agents' announcement, yet refused to answer the door. Therefore, having complied with Section 3109, the DEA agents were entitled to break the door window in order to enter the residence and execute the search.

 As to the .357 Magnum handgun and ammunition found in one of the bedrooms, the Court will not suppress them. Although "firearms" were beyond the scope of the search warrant, the circumstances surrounding the seizure of the .357 Magnum handgun meet the "plain-view" exception. First, given their compliance with the knock and announce statute, the DEA agents were lawfully positioned inside the residence when they found the handgun and ammunition. As the Court noted before, to the extent that the handgun and ammunition were somewhat concealed, "[t]he officers were entitled . . . to open drawers, closets, containers, and other items that might conceal" the things listed on the search warrant. *Edwards*, 885 F.2d at 389.

Just as the first prong of the "plain-view" exception is met, so is the second prong. Unlike the incriminating nature of the 9mm handgun found in the Toyota, the incriminating nature of the .357 Magnum found in the bedroom was immediately apparent to the searching agents. The handgun and ammunition, located across the room from "freshly

---

6. As the Court stated in open court, the cash from the Honda would be excluded from the defendants' joint trial. The risk that the jury would wrongfully associate the cash with Defendant N. POLYNICE substantially outweighs the probative value of the cash as offered against Defendants BORNO and J. POLYNICE. Fed.

R.Evid. 403. Indeed, the probative value of the cash is nominal, at best, given the cash's lack of proximity to any controlled substances. Furthermore, the cash found in the Honda is cumulative of the cash found in the residence, which is not suppressed.

cooked" controlled substances and within five (5) feet of bundles of cash, were proximately connected to the contraband listed in the search warrant. Therefore, although the handgun and ammunition were outside the scope of the search warrant, the DEA agents easily possessed probable cause to seize them. Accordingly, it is

**ORDERED** that the defendants' motion to suppress evidence seized from inside the residence (Docket No. 34) be **DENIED;** the defendants' motion to suppress firearms and ammunition (Docket No. 36) be **GRANTED IN PART** (as to the handgun and ammunition, if any, seized from Defendant BORNO's Toyota Forerunner) and **DENIED IN PART** (as to the handgun and ammunition seized from the residence); the defendants' motion to suppress the cash found in Defendant N. POLYNICE's Honda Accord (Docket No. 36) be **GRANTED;** and the Government's motion to dismiss the motions to suppress as untimely (Docket No. 46) be **DENIED.**