**UNITED STATES of America, Plaintiff,**

v.

**Jimmie Richard SOUTHERN, Defendant.**

**No. Crim.A. 98–50038.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 9, 1998.

---

Richard J. Amberg, Jr., Waterford, MI, for Jimmie Richard Southern, defendant.

Robert W. Haviland, U.S. Atty's Office, Flint, MI, for U.S.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND DISMISS CRIMINAL ACTION

GADOLA, District Judge.

Before the court is a motion by defendant, Jimmie Richard Southern, to suppress evidence and dismiss criminal action. For the reasons set forth below, this court will deny defendant's motion.

### Factual Background

On January 29, 1998, Michigan State Police officers executed a search warrant at 1409 Broadway in Flint, where defendant operated a used-goods resale shop.[1] The warrant authorized them to search for:

> Stolen property including, but not limited to, nine (9)—Oyster Gray snowblowers manufactured by White MTD ...; construction material and devices; tools and recreational equipment; any bills, records or notes indicative of an organized criminal operation or ownership.

(See Def.'s Br. in Support of Mot. to Suppress, Attachment.) In the process of executing the warrant, the officers found and seized one snowblower and a wide variety of stolen construction tools and equipment.

---

1. The parties dispute whether the defendant operated a used goods resale shop at this particular address. On December 1, 1998, this court held an evidentiary hearing on this motion. At that hearing the government offered the testimony of Michigan State Police Detective Sgt. Dan Monroe who testified, inter alia, that the defendant operated a used goods resale shop at 1409 Broadway. Specifically, Det. Sgt. Monroe testified that "... Jimmie [defendant] said it was ... an unofficial pawn shop." Detective Sgt. Monroe also testified that he saw many people enter and exit the premises. Defendant did not offer the testimony of any witnesses. On December 3, 1998, defendant submitted a Second Supplementation to Motion to Suppress Evidence and Dismiss Criminal Action. In the Second Supplementation, defendant asserts that the government has failed to establish that the premises at 1409 Broadway was operated as a used good resale shop.

This court notes at the outset that defendant's Second Supplementation, filed a day after the evidentiary hearing in this matter and after the parties had taken a full opportunity to brief their respective positions, is not properly before this court. Moreover, even if this court were to consider the Second Supplementation, this court would still find that defendant operated a used goods resale shop at 1409 Broadway, and that the police were aware of that fact when they executed the search warrant. Detective Sgt. Monroe specifically testified that defendant told him that the shop at 1409 Broadway was "an unofficial pawn shop." Whether defendant now disputes the testimony offered by Detective Sgt. Monroe is irrelevant. Defendant offered no testimony or other evidence refuting Detective Sgt. Monroe's testimony. Accordingly, this court is satisfied that defendant operated a used goods resale shop at 1409 Broadway.

However, during the course of the raid, the officers also found and seized a number of handguns and long guns (rifles and shotguns). The officers observed a number of firearms in plain view when they entered defendant's store. For their own safety, the officers seized the handguns they observed in the store. Defendant initially denied that there were any handguns on the premises. After being confronted with the handguns found in the store, defendant then admitted that the firearms were not registered to him, and that he had no paperwork for them. Thirty-one long guns were also found in plain view in the store. Though defendant stated that these guns were in his private collection and were not for sale, 15 of these guns had price tags tied to them, and all were in plain view of any customer who would walk in the shop. Defendant admitted to the officers during the course of the search that he was not a licensed firearm dealer. The officers subsequently determined by telephone inquiry to the police post that three of the handguns were stolen. The Officers then seized all of these weapons.

Defendant was later indicted for dealing in firearms without a license and for knowingly possessing stolen firearms.

On October 9, 1998, defendant filed the instant motion to suppress the evidence related to these firearms and to dismiss the indictment.

**Discussion**

Defendant has offered essentially five arguments in support of the motion to suppress:

1. The search warrant affidavit for the original warrant to search defendant's premises did not contain sufficient facts upon which the magistrate could find probable cause to justify issuing the warrant;

2. The officers exceeded the scope of the warrant, which did not mention firearms, when they seized the handguns and long guns found at defendant's place of business;

3. The good faith exception to the exclusionary rule, as provided in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should not apply to this case;

4. The officers' search of defendant's premises was "pretextual" because, while the warrant indicates nothing about weapons, the "real" purpose of the search was for weapons; and

5. The officers had possession of an audio taped conversation between their informant and defendant subsequent to the issuance of the warrant but prior to the time of the search which indicated that an allegation in the warrant affidavit was factually incorrect.

This court finds that each argument is unavailing. Each claim will be discussed in turn.

**1. Sufficiency of the warrant affidavit**

The parties agree that the standard of review governing an issuing magistrate's probable cause determination is that as long as the magistrate had a "substantial basis" for concluding that a search would uncover evidence of wrongdoing, the warrant will not run afoul of the Fourth Amendment. *See Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates,* the Supreme Court held that a magistrate must "make a practical, common-sense decision whether [probable cause to issue a warrant exists], given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information...." *Id.* at 238, 103 S.Ct. 2317.

The affidavit submitted in support of the request for a search warrant in this case provides, in relevant part:

The FACTS establishing probable cause or the grounds for the search are: ...

C. That on January 27, 1998, Ricky Ray Dickenson informed your affiant that on that date he was in [defendant's shop at 1409 Broadway]. That while in that building, Dickenson observed one brand new White MTD snowblower in the building....

D. That on December 23, 1997, Dickenson informed your affiant that he had stolen nine (9) snowblowers from an equipment sales business called Frank's Place located at 11245 East Lansing Road, Vernon Township, Shiawassee County, Michigan.

E. That your affiant confirmed that, in fact, nine (9) snowblowers as described in paragraph # 2 [of the affidavit] had been stolen from Frank's Place in October, 1997.

F. That Dickenson further informed your affiant that the snowblowers, in addition to numerous other items stolen from various constructions site breaking and enterings, were sold to [defendant] Jimmie Southern.

G. That Dickenson sold the snowblowers to Southern shortly after he stole them in November of 1997. He delivered them to Southern at Southern's home in Clio.

H. That on January 27, 1998, Jimmie Southern told Dickenson that several more of the snowblowers Dickenson had stolen were now located in the building [at 1409 Broadway]. These snowblowers are in addition to the one that Dickenson personally observed at that location.

I. That Dickenson informed your affiant that he had sold most of what he had stolen to Jimmie Southern and had delivered it to Southern's home in Clio.

J. That on January 23, 1998, your affiant observed that Southern's residence located at 1340 Bondy, Thetford Township, Genesee County, Michigan, had burned and no one resided at that residence.

(Def.'s Br. in Supp. of Mot. to Suppress, Warrant Aff. at 2.)

■ Under the circumstances, this court finds that the affidavit provided the judicial officer who signed the warrant in this case with a substantial basis for determining probable cause existed to search the shop at 1409 Broadway. The informant admitted to selling a number of items stolen from various construction sites to defendant. This court notes that this statement is a statement against the informant's penal interest, which renders it much more likely to be true. Though the informant indicated that he delivered the stolen goods to defendant's residence, the informant further indicated that he directly observed one of the snowblowers he had stolen and sold to defendant in defendant's shop on January 27, 1998. Moreover, the officer who signed the affidavit indicated that she had observed that defendant's residence was burned and that no one was residing there. A fair inference would be that at least some of the property delivered to de-

fendant's home would have been brought to defendant's shop.

Defendant contends that the informant upon whom the officers and the judge who issued the warrant relied to establish probable cause for the search was unreliable. Defendant argues that the informant admitted culpability in the theft of the snowblowers on December 23, 1997, but did not implicate defendant until January 27, 1998. However, this court finds that a common sense interpretation of paragraphs D through F of the affidavit suggests that defendant made the statements admitting culpability in the theft and implicating defendant at the same time. Defendant also argues that paragraphs E and G of the warrant affidavit are inconsistent and should have led the issuing judge to conclude that the affidavit was not a reliable basis for determining that probable cause existed to conduct a search at 1409 Broadway. Specifically, paragraph E provides that the nine snowblowers were "stolen from Frank's Place in October, 1997." Paragraph G provides that "Dickenson sold the snowblowers to Southern shortly after he stole them in November of 1997." Defendant contends that the two paragraphs indicate different dates on which the goods were allegedly stolen. However, another reasonable interpretation of paragraph G is that it provides the date on which the snowblowers were *sold* to defendant, as opposed to the date they were stolen. On that reading, the two paragraphs are not inconsistent.

Accordingly, given the totality of the circumstances as described in the affidavit, this court finds that the judicial officer who signed the warrant was clearly presented with sufficient evidence to suggest that probable cause existed to search the premises at 1409 Broadway for the stolen snowblowers and other goods and equipment stolen from various other construction sites.

## 2. Whether the police impermissibly exceeded the scope of the warrant by seizing firearms

Defendant's next claim is that the officers exceeded the scope of the warrant by seizing the firearms that form the basis for the indictment in this case. The government

concedes that the warrant mentions nothing about firearms. Moreover, the parties agree that the seizure of the firearms will only be permissible to the extent it falls under the plain view exception to the warrant requirement. As both parties point out, an officer may seize evidence found in plain view during the execution of a search warrant provided that the search warrant itself is valid, and provided further that the incriminating nature of the evidence to be seized is "immediately apparent." *See Horton v. California,* 496 U.S. 128, 142, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

As discussed, *supra,* this court finds that the warrant issued in this case was valid. In addition, it is undisputed that the firearms were in plain view during the execution of the warrant. Defendant claims, however, that the incriminating nature of the weapons was not immediately apparent to the officers conducting the search. Defendant relies on *Arizona v. Hicks,* 480, U.S. 321 (1987), as support for his claim that the officers in this case unlawfully checked the serial numbers of the handguns through the Law Enforcement Information Network ("L.E.I.N.") without probable cause to believe the guns were stolen. In *Hicks,* the police gained lawful access to the defendant's residence under the exigent circumstances exception to the warrant requirement, and in the process of looking for a weapon, moved a stereo system to observe its serial number. The officers then called the serial number into the station and learned the stereo was stolen. The Supreme Court held that the seizure of the stereo system violated the Fourth Amendment because, while the stereo system was in plain view, its incriminating nature was not immediately apparent to the officers. Defendant contends that the officers in this case also manipulated the guns to find their serial numbers so that the numbers could be verified through a L.E.I.N. search. Defendant contends that the officers did not have probable cause to engage in this activity, and hence that the seizure of the firearms in this case was unconstitutional.

 This court finds that the seizure of the firearms in this case did not violate the Fourth Amendment because the incriminating nature of the firearms was "immediately apparent" to the officers. First, defendant admitted to the officers during the course of the search that he was not a licensed firearms dealer. Many of the firearms in plain view of the officers had price tags attached to them. Dealing in firearms without a license to do so is prohibited by 18 U.S.C. § 922(a)(1). Second, defendant also admitted to the officers that the handguns were not registered to him and that he had no registration paperwork for them. Third, the officers had previously received information that defendant had purchased stolen firearms. Under the circumstances, this court finds that a reasonable officer conducting the search in this case would have found the incriminating character of the firearms was immediately apparent. This court finds particularly compelling the fact that many of the firearms had price tags attached to them and were in plain view of customers in a re-sale shop, the operator of which admittedly did not possess a license to deal firearms. Accordingly, the seizure of the firearms falls within the plain view exception outlined in *Horton,* and the seizure did not violate the Fourth Amendment.

### 3. Good Faith Exception

Defendant's next claim is that the "good faith" exception to the warrant requirement, as set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should not apply to this case. This court finds this argument unavailing. As discussed, *supra,* the search warrant issued in this case was valid, and the seizure of the firearms in this case was supported by the plain view exception. Accordingly, there is no need to resort to the "good faith" exception to the warrant requirement, and this court need not address whether that exception applies to the facts of this case.

### 4. Pretextual nature of the search

Defendant's next claim is that the officers engaged in a "pretextual search" when they entered the premises at 1409 Broadway because, while the warrant indicated the officers were searching for stolen snowblowers and other construction tools, the "real purpose" of the officers was to search for weapons. Defendant contends that allowing the

officers to conduct this search for weapons when the warrant did not mention weapons would allow the officers to circumvent the standards set forth pursuant to the Fourth Amendment by merely obtaining a warrant to search for other contraband. Defendant cites the *dissent* in *Horton* for the proposition that such a pretextual search would violate the Fourth Amendment. However, as discussed, *supra*, the facts of this case satisfy the requirements set forth in the majority opinion in *Horton* for a finding that the plain view exception applies to the search in this case. Moreover, there is no substantive evidence in the record that the police actually intended to conduct a search for weapons despite the fact that the warrant did not mention weapons. Accordingly, this claim must fail.

### 5. Dissipation of probable cause

Defendant's final argument is that the officers received information subsequent to the issuance of the warrant but prior to the execution of the warrant that established that some of the statements made to secure the warrant were incorrect. Specifically, defendant points to a conversation between the informant, Dickinson, and defendant, that took place on January 29, 1998. This conversation was recorded by the police. The relevant portion of that conversation has been transcribed as follows:

> Inf.: You wouldn't happen to have some of those snowblowers left would you? Not at all?
>
> Def.: No, except the one I'm usin'.
>
> Inf.: OK, because my uncle was wantin' one of those . . . (unintelligible) I bet you all the money . . . (unintelligible)
>
> Def.: Matter of fact I sat that one out here and an old red one I had, [someone] stopped by and . . . (unintelligible) the old red one. I said I want $300 for that one and $100 for the red one. He took the red one. . . .

(*See* Def.'s First Supplementation to Mot. to Suppress, at 2.) Defendant contends that there is an inconsistency between the statements made during this conversation, and the statements made in support of the warrant request. Specifically, the warrant affidavit indicates that "on January 27, 1998, Jimmie Southern told Dickenson that several more of the snowblowers Dickenson had stolen were now located [at the defendant's shop]." (*See* Warrant Aff. at 2.) However, during the January 29, 1998 conversation, defendant told Dickenson that he did not have any snowblowers except for the one that he was using. Defendant argues that as a result of this inconsistency, the officers should have conducted a more thorough inquiry before executing the search warrant in this case, and their failure to do so renders the search impermissible under the Fourth Amendment.

This court notes at the outset that the officers did not review the recording of the conversation until after they executed the search warrant at 1409 Broadway. This court finds, however, that even if the officers had reviewed the tape, defendant's argument is misplaced. Rather than vitiating the probable cause to search the premises in this case, the January 29, 1998 conversation lends further support to the claim that there was probable cause to search the premises. Defendant essentially admits during the course of this conversation that one of the snowblowers described in the warrant is on the premises, and that he has been using it. That statement confirms that the officers had probable cause to search the premises. Therefore, this court rejects defendant's claim that the January 29, 1998 conversation between Dickenson and defendant indicated that the police no longer had probable cause to execute the search warrant.

### Conclusion

Accordingly, for the reasons set forth above, all five arguments offered by defendant are unavailing, and this court will deny defendant's motion to suppress evidence.

This court also notes that defendant filed a motion to consolidate counts for multiplicity on November 5, 1998. Pursuant to the representations of counsel on the record at the evidentiary hearing held in this matter on December 1, 1998, the parties have stipulated to an agreement that settles that motion. Counsel have indicated that the government will file a superseding information which contains three counts. Defendant will waive indictment, and the parties have also indicated that no new time lines will be established under the Speedy Trial Act. Accordingly,

because the parties have reached an agreement on the motion to consolidate counts, this court will dismiss that motion.

Therefore, this court having reviewed the submissions of the parties and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the motion by defendant, Jimmie Richard Southern, to suppress evidence and dismiss criminal action is **DENIED.**

**IT IS FURTHER ORDERED** that the motion by defendant, Jimmie Richard Southern, to consolidate counts for multiplicity is **DISMISSED.**

**SO ORDERED.**