OPINION
Owensby is appealing from the decision of the Montgomery County Court of Common Pleas overruling his motion to suppress evidence obtained from within his vehicle by police after a traffic stop. After losing his motion, he pled no contest to the charge of possession of crack cocaine. On appeal, Owensby presents the one assignment of error:
 THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS WHEN THE POLICE OFFICER'S SEARCH OF THE APPELLANT'S AUTOMOBILE WAS AFTER THE APPELLANT HAD EXITED THE VEHICLE AND WAS SECURED IN THE REAR OF THE POLICE OFFICER'S CRUISER.
At 11:45 p.m. on December 26, 1997, Officer Roger W. Kielbaso was on McCall Street in the City of Dayton engaged in routine traffic control when his attention was drawn to Owensby because, as he testified:
 A. Well, he was operating a vehicle, was traveling eastbound on McCall Street. I got behind the vehicle and noticed the vehicle was only doing about 20 or 25 miles an hour. It's a posted 35 mile an hour zone. I observed Mr. Owensby glance up into his rear view mirror at me. He then looked down plainly, taking his eyes off the roadway looking down in between the seats. I observed him take his right hand and make movements down in between the two seats making stuffing movements. As he was doing this, the vehicle veered left of center three or four times. There was oncoming traffic at that time of night. Tr. 4.
He also testified that about half the entire vehicle crossed the center line the first time and, after Owensby crossed the center line at least twice again, Officer Kielbaso initiated a traffic stop. He asked Owensby for his operator's license and Owensby responded he did not have it with him, nor did he have any other identification with him. Tr. 6. Officer Kielbaso then had Owensby step out of his car, patted him down, and "I secured him in the rear of my patrol vehicle." Tr. 7. Officer Kielbaso had also called for backup help and by this time Officer Hill was present "observing the passengers and being my backup." Id.
Officer Kielbaso also testified that he planned on issuing Owensby a citation for the left of center violation. Id. Officer Kielbaso did discover through his onboard computer system that Owensby was a valid licensed operator.
With Owensby still in the patrol car, Officer Kielbaso had walked back to Owensby's car where the driver side door was still open. Tr. 19. The officer testified that "for officer safety, I just glanced under into the seat, and in the area where I observed Mr. Owensby making the movements earlier, fearing he may have been stuffing a weapon." Tr. 8. When he looked in the vehicle he "observed a plastic baggie protruding from underneath the carpeting in the area of the emergency brake, which is in between the two seats." Id. On cross, in response to a question suggesting that the baggie was not in plain view, Officer Kielbaso testified: "Well, it was in plain view, sir. It was sticking out underneath the carpeting." Tr. 20. Based on his experience, the officer believed the baggie contained crack cocaine and he retrieved it. Tr. 9. The officer stated that it is: "Routinely known that crack cocaine is packaged and transported in that fashion." Id. In fact, the contents field tested positive for crack cocaine. Although Owensby himself was secured in the rear of the officer's patrol car, Kielbaso testified that he could have returned Owensby to his own vehicle, but, in addition, there were two passengers still in the car "that could have obtained that weapon and used it against me." Tr. 19.
The trial court overruled his motion to suppress and in explanation of its decision stated:
 Generally, where an officer has not yet determined whether to allow a driver to return to his vehicle, he has no basis to search the vehicle prior to that determination, even if he has seen evidence that the person appeared to be secreting something. State v. Henderson (November 7, 1997), Montgomery App. No. 16016, unreported.
 Here, however, there were two passengers in Mr. Owensby's vehicle. Even if the officer decided not to allow the driver to return to the vehicle, he was at risk that one of the passengers would use the weapon against him. The officer's suspicion that the driver had hidden a weapon justified this concern.
 Therefore, the search was justified. The motion to suppress is OVERRULED.
At a suppression hearing, the trial court serves as the trier of fact and must judge the credibility of witnesses and the weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20. In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines, "without deference to the trial court, whether the trial court has applied the appropriate legal standard." State v. Baker (1997), 118 Ohio App.3d 654, 658, citing and quoting State v. Anderson (1995), 100 Ohio App.3d 688,691.
We are, of course, mindful that the Supreme Court of the United States has held that "as a general matter, determinations of reasonable suspicion and probable cause should be reviewed denovo on appeal." Ornelas v. U.S. (1996), 517 U.S. 690, ___,116 S.Ct. 1657, 1663. But the Supreme Court then added: "Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. We believe the standard of review set forth by the United States Supreme Court in Ornelas is substantially the same as the one this court and other appellate courts in Ohio have traditionally used.
From the evidence presented at the suppression hearing, we find that we do not have to reach the issue decided by the trial court, that is, whether a search of a vehicle is justified when the officer has observed furtive gestures, and the driver is secured away from the vehicle, but there are passengers remaining in the vehicle. Instead, we find that because the object seized by Officer Kielbaso was in plain view, the seizure was lawful. Merely viewing the contents of an automobile in plain view from outside the automobile does not implicate a Fourth Amendment Issue. Texas v. Brown (1983), 460 U.S. 730. This court has in the past applied the plain view exception to the general rule that a warrantless search is unlawful. State v. Pipkins (February 9, 1996), Montgomery App. No. CA 15060, unreported; State v. Ward
(November 16, 1994), Montgomery App. No. CA 14186, unreported. The incriminating character of the evidence here was certainly "immediately apparent" to Officer Kielbaso, as required to invoke the plain view exception. Horton v. California (1990),496 U.S. 128, 136, 110 S.Ct. 2301, 2308.
By placing our decision on the grounds of the plain view doctrine, we do not mean to overrule the trial court's rationale that Officer Kielbaso was justified in planning to search the vehicle for a weapon because of the two passengers that remained in it. Under certain circumstances, such as a night time stop in a known high crime area by a very experienced officer, and with passengers still in the car, a search might be justified. We simply do not reach that issue here.
The assignment of error is overruled and the judgment is affirmed.
WOLFF, J., concurs.