**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**ALALA S. KAVA, Defendant.**

High Court of American Samoa
Trial Division

CR No. 38-00

November 17, 2000

Before RICHMOND, Associate Justice, AITULAGI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
For Defendant, Bentley C. Adams III, Assistant Public
Defender

ORDER DENYING MOTIONS
TO SUPPRESS EVIDENCE

Defendant Alala S. Kava ("Kava") is charged with unlawful possession of the controlled substance of marijuana. Kava has filed two motions: (1) to suppress the physical evidence and Kava's statements obtained by police officers on January 23, 2000; and (2) to suppress statements made by Kava to the investigating detective on January 26 and 27, 2000. The hearing on these motions was held on October 26, 2000, with Kava and both counsel present. We also take judicial notice of evidence received at the preliminary examination in this action for purposes of deciding the present motions.

## Facts

On January 23, 2000, at approximately 1:00 a.m., police officers Romeo Tiumalu ("Tiumalu") and Siliavalo Sea ("Sea") were patrolling the Tafuna area when they observed a parked pickup near the netball field next to a public school, the Manulele Elementary School. They approached the vehicle and ordered Kava, the driver, to move it from the school area. As Kava began to drive the pickup away, Tiumalu noticed a girl that he recognized as a juvenile drinking from a bottle of beer in the back of the pickup.

The officers stopped the pickup. Approaching the vehicle, Tiumalu observed in the truck an open Vailima beer container and a half-empty Bud-Ice six-pack. Tiumalu asked Kava if he knew that a juvenile was drinking in the back, and if he himself had been drinking. Kava answered "yes" to both questions. The officers then asked Kava and Donna Misioka ("Misioka"), the front seat passenger, to step out of the vehicle.

Sea looked into the pickup cab for intoxicants. On the driver's side floorboard, he saw three plastic bags containing what he recognized to be marijuana. The officers escorted the three individuals, Kava, Misioka and the juvenile, to Substation West. Detective Lima P. Togia ("Togia") undertook the investigation upon their arrival.

Misioka told Togia that she owned the bags of marijuana. Kava agreed. Misioka was arrested but was released after 24 hours. At Togia's follow-up questioning, Misioka told Togia that she had lied at Kava's request. She said that Kava had picked her and her underage friend up, that they had purchased the beer, and that Kava had promised to sell her a marijuana cigarette. Kava parked at the netball field at Manulele. They began drinking, and Kava showed Misioka the three bags of marijuana. It was then that the officers arrived.

In view of Misioka's statement, Togia approached Kava at his place of employment on January 26, 2000. He asked Kava to go with him to the substation for questioning, but advised Kava that he was not under arrest,

and that he would be free to leave at any time. Kava went with Togia to the substation. There, before further questioning, Togia advised Kava of the charges under investigation, as well as the *Miranda* warnings. Kava acknowledged that he received and understood the rights in the warnings, and indicated verbally and in writing his willingness to waive the rights and make a statement. Then Kava orally admitted owning the marijuana, and wrote and signed a statement confirming his admission. Kava was then allowed to leave the substation.

On January 27, 2000, the next day, Togia again approached Kava at his workplace and asked Kava put in writing his verbal statement regarding where he had purchased the marijuana. Kava complied, and this second statement was attached to the first.

This prosecution was commenced and Kava was arrested in late April 2000.

## Discussion

### A. Suppression of Evidence Obtained on January 23, 2000

■ The exclusionary rule in American Samoa requires that the court prohibit introduction of that evidence at a criminal trial which is obtained in violation of Article I, Sections 5 and 6 of the Revised Constitution of American Samoa. *Am. Samoa Gov't v. Afamasaga*, 17 A.S.R.2d 145, 148 (Trial Div. 1990). *See Mapp v. Ohio*, 367 U.S. 643, 656 (1961).

■ The first issue is whether the stopping of Kava's pickup was lawful. Police officers are authorized to stop an individual "when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, 462 U.S. 696, 702 (1983); *see also Michigan v. Summers*, 452 U.S. 692, 699 & n. 7 (1981); *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The Supreme Court has extended this rule to the stopping of vehicles. *See United States v. Cortez*, 449 U.S. 411, 421 (1980); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975). In this case, the officers observed a juvenile drinking beer in the back of Kava's pickup; beside her were an open Vailima beer container and a half-empty Bud-Ice six-pack. Their observations gave rise to reasonable, fully articulable suspicion of conspicuous criminal activity afoot: consumption of beer in a prohibited place, A.S.C.A. § 27.0532, and driving under the influence of alcohol, A.S.C.A. § 22.0707(a). The officers acted within the scope of their duty in pulling over Kava's pickup.

■ The second issue is whether Kava's affirmative answers to the officers' questions after stopping the pick-up truck may be admitted into

evidence. Article I, Section 6 of the Revised Constitution of American Samoa provides that "No person shall be . . . compelled in any criminal case to be a witness against himself." The Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), ruled that this constitutional language requires that a person be warned of particular rights, and have validly waived these prior to any statements made during custodial interrogation. Otherwise, self-incriminating statements are fully admissible in evidence. *See Am. Samoa Gov't v. Malota*, 5 A.S.R.2d 101, 105 (Trial Div. 1987). Kava was not in custody at the time Tiumalu and Sea questioned him and received from him answers. Traffic stops, presumptively temporary, are not unduly coercive, and are not generally considered to qualify as "custody" giving rise to *Miranda* requirements. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Kava's communications may thus be admitted.

■ Third is the issue of whether Kava was appropriately ordered out of his car along with the two passengers. The Supreme Court in *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1978), established that a police officer may order the driver of a car to step out of it, even without a suspicion of criminal activity, if the vehicle has been legitimately stopped. The mere inconvenience of stepping out of a car is outweighed by the officer's interest in protecting himself from an unsuspecting assault. Because the officers legitimately stopped Kava's pickup, they acted within their authority in ordering him out of the car.

Fourth is the issue of whether the three bags of marijuana discovered pursuant to a warrantless search of Kava's vehicle are permissible as evidence. Article I, Section 5 of the Revised Constitution of American Samoa guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This provision mirrors the Fourth Amendment of the United States Constitution. The Revised Constitution of American Samoa also provides that "[e]vidence obtained in violation of this section shall not be admitted in any court." *Id.* Generally, these mandates translate into a warrant requirement for the government to search the areas enumerated in Article I, Section 5. If items are seized without a warrant, the evidence will not be admitted in court. There are, however, established exceptions to the warrant requirement.

■ Two exceptions are relevant in this case. First is the "automobile exception," according to which the police may search a vehicle without a warrant if they have probable cause to believe that it contains contraband or fruits, instrumentalities, or evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 153-54 (1925). This exception is based on the mobility of vehicles which limits the effective window of opportunity to search them, as well as on the lesser expectations of privacy that people have of a vehicle as opposed to a residence. Thus, if the police have

probable cause to search a vehicle, they may search the entire vehicle and all containers within the vehicle that might contain the object for which they are searching. *United States v. Ross*, 456 U.S. 798, 821-24 (1982).

▮ In this case, the officers had probable cause to believe that Kava's pick-up truck contained the instrumentalities and evidence of a crime. A juvenile was imbibing an alcoholic beverage in the back of the pickup; beside her was an open Vailima beer container and a half-empty Bud-Ice six-pack. They asked Kava whether he knew that a juvenile was drinking in the back, and whether he himself was drinking, and he affirmed. These factual foundations give sufficient rise to a probable cause belief that Kava and his companions were consuming beer in a prohibited place, and he was driving under the influence of alcohol. The officers' search of the interior of Kava's car thus qualifies under the automobile exception to the warrant requirement. Sea's discovery of the bags that contained what he reasonably recognized to be marijuana further authorized him to search remaining compartments and interior locations where the contraband could be found.

In addition, the officers' seizure of the three bags of marijuana was valid under the "plain view exception" to the warrant requirement. *See Am. Samoa Gov't v. Loia*, 16 A.S.R. 1, 3 (Trial Div. 1990), citing and setting forth the three criteria for the warrantless seizure of evidence in plain view articulated in *Coolidge v. New Hampshire*, 403 U.S. 443, 464-73 (1971). In the same year this Court decided *Loia*, however, the Supreme Court, in *Horton v. California*, 496 U.S. 128, 137-41 (1990), eliminated inadvertent discovery of the seized item as an essential element of the plain view exception. We moderate the statement of the plain view rule in *Loia* accordingly.

▮ *Coolidqe,* as modified by *Horton,* establishes that police may make a warrantless seizure when they (1) are lawfully in a position to observe the item seized, (2) discover the item in plain view, and (3) immediately recognize the incriminating character of the item. In this case, the officers legitimately stopped the pickup to investigate apparent criminal activity. Sea then observed the contraband in plain view within the vehicle, and immediately considered it to be evidence of crime. The warrantless seizure of the three bags of marijuana is thus permitted under the plain view exception.

Therefore, we hold that the officers acted appropriately in stopping and searching Kava's pickup on January 23, 2000. We further hold that Kava's responses to officer's questions and the contraband discovered are admissible evidence. Likewise, Kava's responses to Togia's proper questioning a short time later are admissible.

## B. Suppression of the Statements of January 26 and 27, 2000

█ As stated above, the Article I, Section 6 of the Revised Constitution of American Samoa provides for the right against self-incriminating admissions. The Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), implements this right. Under *Miranda*, an accused must be warned of his rights, and must have made a knowing, voluntary and intelligent waiver of these rights prior to custodial interrogation by the police. *Id.* at 479. We apply the *Miranda* principle in American Samoa. *See Am. Samoa Gov't v. Malota*, 5 A.S.R.2d 101, 105 (Trial Div. 1987).

In the case at hand, Kava was not in police custody. He was at the police substation voluntarily. He was not constrained or coerced. No threats or promises were used to induce Kava to utter, write and sign his statements, and he was advised that he could leave at any time. Though it was unnecessary to administer to Kava the *Miranda* rights because he was not in custody, Togia did so anyway. Togia advised Kava of the charges he was investigating, and administered the *Miranda* warnings to him. Kava received, understood, and waived the *Miranda* rights both verbally and in writing. Then Kava orally admitted owning the three bags of marijuana and confirmed his admission in writing. He left the substation without hindrance on January 26. The next day, at Togia's request, Kava voluntarily amplified his written statement to conform to his original oral statement.

At the hearing on the present motions, Kava's brother, a coworker, testified that on both January 26 and 27, Togia appeared to confront Kava angrily, and Kava reacted in fear, at the workplace meetings. He claimed that on the second occasion, Togia threatened to arrest Kava if Kava did not write what he was told to write. He further testified that on this occasion, Togia also asked Kava for money for a *faalavelave* ("family affair"). A friend essentially confirmed the brother's testimony about the second occasion. This witness also testified that he was not here in January and only arrived from (Western) Samoa in early February. Neither of these testimonies is credible.

The credible testimony established that Togia's conduct was lawful and appropriate, and that Kava's admissions were voluntarily made in a non-custodial situation. His admissions are therefore admissible evidence.

### Order

Kava's motions to suppress the evidence are both denied.

It is so ordered.