**UNITED STATES of America,**
**Appellee,**

v.

**Anabel PEREZ, Defendant–Appellant.**

No. 02–1571.

United States Court of Appeals,
Second Circuit.

Aug. 13, 2003.

Louis R. Aidala, New York, NY, for Defendant–Appellant.

David M. Siegal, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney, and Laura Grossfield Birger, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Present: POOLER, SACK, and WESLEY, Circuit Judges.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is **AFFIRMED.**

Defendant–Appellant Anabel Perez appeals the district court's decision to deny his motion to suppress the evidence obtained against him. Rather than entering a plea with the government that did not allow him to preserve his right to appeal the denial of the suppression motion, Perez was convicted of two drug trafficking charges after a bench trial on stipulated facts. The suppression motion involved law enforcement officials' discovery of cocaine possessed by Perez. The officials were conducting surveillance at a Bronx apartment building, which they believed to be a center for drug trafficking. While the law enforcement officers were watching the building, Perez drove by the building twice and then parked upon his third approach. He removed a large, apparently heavy plastic container or cooler from the trunk and placed it on the ground. He also placed a suitcase from the car in the trunk. Perez picked up the plastic container and approached the entrance to the apartment building. Three law enforcement officers in plain clothes arrived in two separate unmarked cars, which they also parked near the building. Perez, allegedly looking nervous, paused and placed the container on the ground. Perez entered the building, with one of the three agents holding the door for him. The three officers and Perez all approached the elevator. One of the officers, Sergeant Murphy, asked Perez if he had gone fishing, and Perez replied in the affirmative. All four men entered the elevator. Sergeant Murphy asked Perez if he could see the fish, and Perez agreed. Murphy discovered approximately twenty-six kilograms of cocaine in the cooler.

Perez, after being handcuffed, consented to a search of his car. The suitcase in the trunk contained over $300,000. After being advised of his rights, Perez admitted that he engaged in large-scale narcotics trafficking. He also admitted that additional drug proceeds were located in his mother's apartment, where he was also residing, and consented to a search of that apartment, which resulted in the discovery of additional cash.

Perez moved to suppress the evidence obtained against him. The district court held a hearing at which Sergeant Murphy and two other law enforcement officials testified. Special Agent McClarence was one of the three officers who entered the apartment building. Agent Plancon was conducting surveillance outside of the building during the events in question and witnessed Perez's consent to the search of his mother's apartment; he was also the agent who reported the facts to the U.S. Attorney's Office in order to draft the complaint.

At the hearing, it became apparent that the parties disagreed as to whether the officers had identified themselves prior to the opening of the cooler. The complaint indicated that the officers identified themselves before obtaining consent to open the cooler. Sergeant Murphy and Special Agent McClarence testified that they did not identify themselves until after the discovery of the cocaine. Perez's affidavit,

though ambiguous, suggested that they may have identified themselves as law enforcement officers prior to that point. The district court found that the testimony of the law enforcement officials at the scene was credible, but that Perez would nonetheless have known that the three were law enforcement officials because of the way that they arrived and because they seemed out of place in the neighborhood.

As to the legal issues, the district court found that the encounter between Perez and the officials was consensual and that Perez's consent to the search of the container was voluntary. The district court also found that Perez's consents to the searches of his car and of his mother's apartment were also voluntary.

On appeal, Perez argues that the district court committed clear error in its findings, particularly with respect to its decision to credit the testimony of Sergeant Murphy and Special Agent McClarence that they had not identified themselves and its finding that Perez nonetheless would have known that the three men were government agents. He argues that these findings were speculative, without support, and based on implausible and contradictory testimony. We disagree and affirm the judgment of the district court.

Defendant argues that faced with the highly improbable testimony that he allowed a total stranger to open his cooler containing twenty-six kilograms of cocaine, the district court should have found that, at the very least, sufficient doubt existed as to the true facts. Therefore, he concludes that the district court need not have ruled on any particular legal issue (such as voluntariness), because the government had not met its burden of proof in demonstrating what had actually occurred in the apartment building.

However, the court's findings were not clearly erroneous. The court evaluated the credibility of the testifying witnesses, and made factual findings that are not, despite the defendant's arguments, without support. The court believed the officers' testimony that they did not identify themselves to Perez until after the opening of the cooler. The court then evaluated all the circumstances in determining that a reasonable person in Perez's situation would nonetheless have concluded that the three men were law enforcement officers. Given the circumstances of the officers' approach, this conclusion is not clearly erroneous.

Nor does the variance between the complaint and the testimony of Murphy and McClarence on the issue of whether the officers identified themselves change this result. Agent Plancon, who was not present inside the apartment building, provided the facts for the complaint. We do not know exactly what Plancon learned from the officers on the scene. Given that it is undisputed that Plancon did not have firsthand knowledge of the events inside the building, the inconsistency does not invalidate the court's findings, particularly given its belief that the testimony of Murphy and McClarence was credible.

Defendant also suggests that the district court erred in finding that *Miranda* warnings were not necessary before the search of the cooler and the car. However, although the knowledge of the right to refuse consent may be a factor in considering whether consent is voluntary, *United States v. Garcia*, 56 F.3d 418, 422–23 (2d Cir.1995), failure to inform a suspect of his rights does not automatically render a consent involuntary. *United States v. Moreno*, 897 F.2d 26, 33 (2d Cir.1990) (abrogated on other grounds by *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). Instead, a district court considers the totality of the cir-

**860**

cumstances. Here, these circumstances reveal a voluntary consent.

We have reviewed all other arguments made by defendant and find them to be without merit. Therefore, we affirm.