Filed 3/23/26  P. v. Miranda CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B342326 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.  24CJCF03185) |
| v. | |
| MICHAEL MIRANDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shelly Torrealba, Judge.  Affirmed as modified.

Christina Vanarelli, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Defendant and appellant Michael Miranda challenges the trial court's denial of his motion under Penal Code section 1538.5[1] to suppress evidence recovered when police officers detained him and found drugs and an unregistered handgun in his car. After the court denied his suppression motion, Miranda pleaded no contest to one count of carrying a concealed firearm in a vehicle (§ 25400, subd. (a)(1)), and the court sentenced him to the low term of 16 months (§ 1170, subd. (h)(1)) in jail.

Miranda contends the officers lacked reasonable suspicion to detain him and asks that we reverse the denial of his suppression motion. We disagree. The officers detained Miranda after they observed him in the driver's seat of his parked car, along with one other person sitting in the back rear seat. One of the officers testified that in his experience, when (1) this configuration of driver and passenger occurs (2) at night in an area known for drug transactions (3) with a driver who is not engaged in ride-sharing, all of which facts were present, it is indicative of an illegal drug sale. The officer's testimony showed he acted on "an objective circumstance justifying the detention," (*People v. Flores* (2024) 15 Cal.5th 1032, 1046 (*Flores*)), not merely a hunch.

We therefore affirm the judgment of conviction, but with a modification to correct an error in the court's statement about the minimum amount it could impose as a restitution fine.

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

## FACTUAL SUMMARY RELATED TO MIRANDA'S SUPPRESSION MOTION

The sole witness at the preliminary hearing was Andres Martinez, a field training officer with the Los Angeles Police Department. Martinez had worked as a peace officer for 10 years and estimated that he had qualified to testify as a narcotics expert about five times previously.

At around 10:30 p.m. on May 18, 2024, Martinez was patrolling the area around Westmoreland Avenue and Oakwood Avenue in Los Angeles, "an area known for drug transactions" where he had made many arrests in the past for narcotics-related offenses. Martinez observed two men seated in a parked vehicle, with one in the driver's seat and the other in the rear passenger-side seat. According to Martinez, this seating arrangement is "indicative of a drug transaction. Typically, drug dealers, what they do is they like to control their product and their money and their skills [*sic*] up front with them. It also prevents robberies from happening. So they can easily stay in the vehicle, operate the vehicle, take off if they need to. And that way they have their buyer in the back, and the buyer doesn't have access to the rest of the supply." In addition, Martinez saw that there was no insignia or other indicia that the car was a ride-share vehicle.[2]

Martinez conducted what he called "an investigative stop" of the vehicle. He pulled up behind the car and turned on the

---

[2] In their appellate brief, the People state that Martinez "saw smoke emanating from the car." But Martinez made no mention of smoke in his testimony at the preliminary hearing, and the trial court did not rely on the presence of smoke as a basis for denying the suppression motion.

red-and-blue lights atop his patrol car. Martinez asked the driver, whom he identified as Miranda, to roll down his window and told him that he had stopped him to investigate a potential narcotics transaction. As he was doing so, Martinez's partner, who was standing on the opposite side of the car, said he saw a clear baggie near the center console containing a crystal-like substance.

The officers told Miranda and the passenger to get out of the car. Martinez recovered the baggie. Martinez searched the vehicle and found a scale, some other drugs, and a loaded handgun. Martinez referred to the gun as "a ghost gun" because it had no serial number. According to Martinez, such a gun cannot be registered to an individual.

At the close of the preliminary hearing, Miranda made a motion under section 1538.5 to suppress the evidence recovered from the vehicle. The magistrate denied the motion. The magistrate found that Miranda had been detained because a reasonable person in Miranda's position would not feel as if he were free to leave. But the magistrate concluded that the detention and subsequent search were reasonable based on Martinez's testimony that the specific positioning of the two people in the car in a neighborhood known for drug sales was indicative of a narcotics transaction.

Miranda filed a renewed motion to suppress on September 11, 2024, again arguing that Martinez lacked reasonable suspicion to detain Miranda. The trial court denied the motion.

# DISCUSSION

## A. The Officers Had Reasonable Suspicion to Detain Miranda

When a defendant challenges the denial of a motion to suppress evidence on the ground that it was seized illegally (§ 1538.5, subd. (a)), we review the trial court's factual findings for substantial evidence, but "[w]e independently assess whether the challenged seizure violates the Fourth Amendment, according to federal constitutional standards." (*People v. Jackson* (2024) 100 Cal.App.5th 730, 737.)

A reasonable person in Miranda's position would not have "fe[lt] free 'to disregard the police and go about his business'" (*Florida v. Bostick* (1991) 501 U.S. 429, 434 [111 S.Ct. 2382, 115 L.Ed.2d 389]), and Miranda was thus detained by Martinez and his partner. Miranda does not deny that the drugs were in plain view of Martinez's partner. This would justify the subsequent search of the entire vehicle (see *People v. Waxler* (2014) 224 Cal.App.4th 712, 719) but only if the officers were "lawfully located in a place from which the [contraband could] be plainly seen." (*Horton v. California* (1990) 496 U.S. 128, 137 [110 S.Ct. 2301, 110 L.Ed.2d 112].) The only question, then, is whether the initial detention of Miranda was justified.

" '[T]he Fourth Amendment permits an officer to initiate a brief investigative . . . stop when [the officer] has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." [Citations.] "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." [Citations.] [¶]

Because it is a "less demanding" standard, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." [Citation.] The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [Citation.] Courts "cannot reasonably demand scientific certainty . . . where none exists." [Citation.] Rather, they must permit officers to make "commonsense judgments and inferences about human behavior." ' " (*Flores*, *supra*, 15 Cal.5th at p. 1041, quoting *Kansas v. Glover* (2020) 589 U.S. 376, 380-381 [140 S.Ct. 1183, 206 L.Ed.2d 412].)

Miranda's argument that his detention was unreasonable relies primarily on *Flores*, where our Supreme Court held that officers lacked reasonable suspicion to detain an individual who ducked behind a parked car when he saw officers driving nearby. "One fair interpretation of the facts is that Flores initially tried to avoid being seen by the officers. Thereafter, and somewhat inconsistently, he stood and was in view for several seconds. He then failed to acknowledge the officers' approach, and sought to avoid interacting with them." (*Flores*, *supra*, 15 Cal.5th at p. 1043.)

This behavior alone did not justify the detention. The court reasoned that a person's presence in a high-crime area " 'standing alone, . . . is not enough to support a reasonable, particularized suspicion that the person is committing a crime.' " (*Flores*, *supra*, 15 Cal.5th at p. 1045.) This is because "a great many law-abiding Californians live, work, or otherwise find themselves in areas where criminal activity is prevalent. Their mere presence there cannot be said to transform them into suspects. Instead, it is 'a

6

factor that can lend meaning to the person's behavior.'" (*Id.* at p. 1044.) Flores's "acts of ducking out of sight, bending with his hands by his shoe, and not acknowledging the officers' presence, suggest an unwillingness to be observed or interact." (*Id.* at p. 1047.) But this alone, "while noteworthy, does not support a reasonable suspicion that he was engaged in *illegal* activity." (*Ibid.*)

Miranda argues his case is analogous, and that he and his passenger did not even duck or seek to avoid interacting with the police: "They were just sitting in a car" in an area known for illegal drug sales. But there is an important distinction between Miranda and Flores. The officer who detained Flores "did not see [him] engage in any conduct suggesting he was there to buy or sell drugs or was otherwise involved in illegal conduct," and did not "see Flores interact with anyone." (*Flores, supra*, 15 Cal.5th at p. 1045.) In this case, Martinez saw Miranda and his passenger both seated in a car in a specific position that, in the officer's experience, suggested a narcotics transaction.

The court in *Flores* recognized that "facts that may appear benign in some contexts may reasonably be considered less so in others. . . . As the high court pointed out in [*United States v. ]Cortez*[ (1981)] 449 U.S. [411,] 418 [101 S.Ct. 690, 66 L.Ed.2d 621], a trained police officer could draw inferences 'that might well elude an untrained person.'" (*Flores, supra*, 15 Cal.5th at p. 1046.) The court cautioned that, to rely on superficially innocent conduct as a basis for detention, "the officer must articulate [his] experience and expertise as an objective circumstance justifying the detention." (*Ibid.*) That is just what Martinez did here. He not only stated that, in his experience, drug dealers often have their customers sit in the back seat while

they remain in the front, but he explained why they do so: by maintaining physical separation from their customers, the dealers reduce the risk of robberies and provide for relatively easy escape.

What Martinez described was not a hunch, but rather an objective basis for suspicion tethered to this training and experience that the trial court could evaluate. Martinez did not treat Miranda's presence in a high-crime area as decisive, but merely as " 'a factor that can lend meaning to the person's behavior.' " (*Flores*, *supra*, 15 Cal.5th at p. 1044.) The lack of any ride-share insignia on the vehicle reduced the probability of the most likely innocent explanation of why Miranda's sole passenger was sitting in the back seat. In these circumstances, the trial court did not err in concluding Martinez had reasonable suspicion to detain Miranda.

## B.    The Restitution Fine Amount Must Be Corrected

At the sentencing hearing, the trial court stated "[t]here is a minimum [fine] of $400 up to $10,000 to the general victim restitution fund," and stated, "the court will impose the minimum of $400 pursuant to . . . section 1202.4[, subdivision ](b)." In fact, the minimum restitution fine under section 1202.4, subdivision (b)(1) for a defendant convicted of a felony is $300.

Miranda contends his attorney rendered ineffective assistance by failing to call the court's attention to this misstatement. The Attorney General contends a rational defense attorney could choose not to object to what he characterizes as a de minimis error. We need not address any issues related to ineffective assistance of counsel because "we may review an asserted legal error in sentencing for the first time on appeal" even if the defendant did not object in the trial court. (*People v.*

8

*McCullough* (2013) 56 Cal.4th 589, 594.) "When sentencing error does not require additional evidence, further fact finding, or further exercise of discretion, the appellate court may modify the judgment appropriately and affirm it as modified." (*People v. Haskin* (1992) 4 Cal.App.4th 1434, 1441.)

Although it misspoke when stating the minimum restitution fine amount, the record is clear that the court meant to impose the minimum allowable, which is $300 and not $400. Accordingly, we direct that the abstract of judgment be corrected to reflect the restitution fine imposed as $300.

## DISPOSITION

The judgment of the trial court is affirmed with directions to reduce the restitution fine imposed to $300. The clerk of the superior court is directed to prepare a corrected abstract of judgment reflecting the restitution fine amount as $300 and forward a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.          BENDIX, J.

9